UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,        CASE NO. 13-20116

v.                               PAUL D. BORMAN
                                 UNITED STATES DISTRICT JUDGE

DANIEL JUMAR FLUCKES,
_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR RECONSIDERATION OF SENTENCING**

On January 27, 2015, Defendant Fluckes filed a Motion for Reconsideration of the Court's Ruling Regarding Sentencing. (Dkt. #47) On March 19, 2015 the Government filed a Response. (Dkt. #53) On April 3, 2015, Defendant filed a Reply. (Dkt. #55)

Eastern District of Michigan Local Rule 7.1(h), Motions for Rehearing or Reconsideration, states that the court will not grant motions "that merely present the same issues ruled upon by the court. . . . The movant must not only demonstrate a palpable defect by which the court and the parties . . . have been misled, but also show that correcting the defect will result in a different disposition of the case."

In the instant case, for the reasons that follow, the Court concludes that the issues raised by Defendant's Motion had already been raised and ruled upon by the Court, and further, that the Defendant has not demonstrated a palpable defect by which the Court and the parties have been misled. Accordingly, the Court denies Defendant's Motion for

1

Reconsideration of Sentencing.

DISCUSSION

    1. The Guilty Plea: February 21, 2014

On February 21, 2014, Defendant Daniel Jumar Fluckes pled guilty, pursuant to a Fed. R. Crim. P. 11(c)(1)(C) plea agreement [hereinafter Rule 11], to Receipt of Child Pornography, 18 U.S.C. §2252A(a)(2).[1] This count carries a statutory range of incarceration from a five year mandatory minimum up to 20 years, and a fine of up to $250,000.

    The Rule 11 noted in Paragraph 2B, Guideline Range:

> The parties disagree on the applicability of the following guideline:
> 2G2.2(b)(5), relating to pattern of activity involving exploitation. The government recommends that the Court determine that Defendant's guideline range is 262-327 months. . . . Defendant recommends that the Court determine that his guideline range is 151-188 months. . . . The Court is not bound by either party's recommendation concerning the guideline range. . . .

Paragraph 7 of the Rule 11, Waiver of Appeal, states, *inter alia*:

> Defendant waives any right he may have to appeal his conviction. If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement [the top of the sentencing guideline range] Defendant also waives any right he may have to appeal his sentence.

---

[1] Defendant had been initially charged in a Three Count Indictment with (1) Distribution of Child Pornography, 18 U.S.C. §2252A(a)(2); (2) Receipt of Child Pornography, 18 U.S.C. §2252(a)(2); (3) Possession of Child Pornography, 18 U.S.C. §2252(a)(5)(B).

<u>2.  The November 17, 2014 Sentencing Hearing</u>

On Monday, November 17, 2014, the Court held a sentencing hearing. The sole Guideline matter for determination was whether to apply the five level Sentencing Guideline enhancement  (§2G2.2(b)(5)) for  engaging in a pattern of activity involving the sexual abuse or exploitation of a minor (MV1). The Presentence Report had included that enhancement in its Guideline calculations.

The Government contended that the enhancement applied because in addition to receiving child pornography, the Defendant, on multiple occasions, had contact of a sexual nature with (MV1), an eight year old minor male. (Dkt. #48, Tr. Nov. 17, 2014 Sentencing, A.U.S.A.  p.9.  The only evidence of this conduct was Defendant's statement, at a five hour, post-polygraph examination questioning on January 29, 2013, that he had inappropriately touched MV1 on multiple occasions.  At a subsequent video-recorded interview of MV1 conducted by Homeland Security Investigations Victim Witness Specialist Amy Allen, on February 1, 2014, MV1 denied that Defendant had ever touched him inappropriately. (Tr. Nov. 17, 2014, pp. 11-12; Dkt. #46, Tr. Jan. 16, 2015 Continuation of Sentencing p. 14.)

Defense counsel contended that the five point enhancement should not be applied because the alleged touching conduct did not occur:

> It was an imaginary allegation that the Defendant felt coerced
> into making in a post-polygraph interrogation that occurred
> [pre-plea] on January 29, 2013.  Defendant's [former] counsel

3

> was not present. She did not consult, did not meet with the Defendant prior to him going in for the polygraph or the interrogation. The Defendant had only five hours of sleep the night before. He was 19 . . . had not eaten for 16½ hours prior to the start of the polygraph and 24 hours by the time it had completed.

Tr. Nov. 17, 2014, Poota pp. 9-10.

The Government responded that Defendant's admission was validated because of its detail both as to when and where the touching occurred, and the identity of MV1. The Court concluded that a preponderance of the evidence then before it supported the Guideline enhancement.

Defendant's offense of conviction required a mandatory minimum sentence of 60 months incarceration. The Guideline range in the Presentence Report, which the Court adopted, was 262 to 327 months. However, because the bottom of that range, 262 months, exceeded the authorized maximum sentence of 20 years/240 months, the Guideline range became 240 months.

In arriving at the sentence, the Court took into account the Guideline range of 240 months, applied the sentencing factors embodied in 18 U.S.C. §3553(a), and then varied downward and imposed a sentence of 80 months, which the Court concluded was sufficient but not greater then necessary to comply with the purposes set forth in §3553(a).

At the conclusion of the November 17, 2014 sentencing hearing, the Court discussed the Rule 11 appeal waiver provision contained in ¶ 7 at p. 9 of the Plea

Agreement:

> And under the plea agreement, I think there's a waiver of appeal of the conviction and sentence if I sentenced within the guideline range of – that the Defendant at that time recommended 151-188.

Tr. Nov. 17, 2014 p.34.  In fact the Court's description of an all-encompassing appeal waiver was erroneous, as discussed *infra* at pp. 8, 13.

### 3.  Defendant's Post-Plea Polygraph Examination January 29, 2013; Government Audio Interview of MV1 February 1, 2013

Subsequent to his guilty plea, Defendant Fluckes, with his then-counsel's consent, had agreed to take a government polygraph examination. When the Government had scheduled the polygraph examination, it had advised then-defense counsel that she could attend if she wished.  On the day of the examination, when defense counsel's assistant called the Government and asked if she was required to attend the polygraph examination, she was informed that defense counsel was not required to attend, but could if she wished. Defense counsel chose to not attend the polygraph examination.

Defendant's mother brought him to the polygraph examination at 1pm.  The examination interview began at 1:15pm and lasted one hour.  The polygraph examination took 30 minutes.  After the conclusion of the examination at 2:45pm, Homeland Security Investigation Special Agent Devallons Desmarets retained Defendant in the room and questioned him for more than five hours – until 8:15pm. The Government did not provide Defendant with a subsequent *Miranda* warning waiver after the conclusion of the polygraph examination at 2:45pm.  The pre-examination *Miranda* waiver that Defendant

had signed specifically referenced only the polygraph examination and a pre-polygraph interview. A copy of that form and accompanying documents is contained in Attachment 1 to this Opinion.[2]

Defendant's counsel asserted that Fluckes' mother remained in the waiting room all eight hours, sought unsuccessfully to speak with him time and again, and stated that Fluckes was not permitted to speak with his Mother after the polygraph examination. Thus, Fluckes was retained in police custody and questioned for over five more hours by Homeland Security Special Agent Devallons Desmarets, who had attended the polygraph examination. Present-Defense Counsel contends that Defendant was not provided food during the eight hours. The Government contends that he was offered snacks.

At the sentencing hearing, the Assistant U.S. Attorney argued that the results of the Government's polygraph examination of Defendant indicated that he was not truthful in his responses to questions about conduct with an underage child. After the polygraph

---

[2] The pre-polygraph *Miranda* waiver is headed with this language: "Home Security Investigations, Polygraph Examination," and contains Defendant's signature. The next page says "Polygraph Examination, Statement of Consent," and states: "I consent to be interviewed and submit to a polygraph examination." (Tr. Jan. 16, 2015, p.8) It is clear that Fluckes' consent was to a pre-polygraph interview, followed by his polygraph exam. That is exactly what happened here. Nothing in this statement of consent, created by HSI, speaks to a post-polygraph interview.

Defendant Fluckes signed and affirmed that "I gave my permission and consent to be interviewed and to undergo a polygraph examination." Further down in that page, is the phrase: "Polygraph Examination Interview Worksheet." This interview document, completed before the polygraph exam, documents Defendant's answers to, *inter alia*, these significant questions:
1. How many hours sleep did Defendant have the prior evening; five.
2. When was the last time Defendant ate or drank something; 8:30 the previous night.

(Tr. Jan. 16, 2015, p.9)

examination concluded, the Government kept Defendant Fluckes, who had not been subject to pre-trial detention, in its custody and questioned him for five hours during which Defendant stated that on multiple occasions, when he was 18-19 years old, he had improperly touched MV1, a friend's minor eight year old brother.  The Government acknowledged that it had subsequently conducted a videotaped interview of that minor child (MV1), where Amy Allen, Homeland Security Investigations Victim Witness Specialist, questioned MV1 as to whether he was the victim of inappropriate conduct by Defendant; MV1 consistently denied that Defendant Fluckes ever touched him in any inappropriate manner.[3]  The Government contended, however, that the five point §2G2.2(b)(5) enhancement should be applied because young children victims frequently

---

[3] The Government utilized Defendant's admissions at the post-polygraph questioning as the basis for seeking a hearing to revoke his bond on February 4, 2013.  In the interim, between the Government's request, and the holding of the hearing, the Government had conducted a video interview of MV1 on February 1, 2013, three days before the hearing, in which he denied, time and again, any improper touching by Defendant.

At this Court's sentencing hearing, the AUSA stated that a copy of the recent MV1 video was not yet available to provide to defense counsel, but that she informed former defense counsel about the results of the video interview of MV1.  Then-Defense counsel did not mention the video interrogation results at the Bond Hearing.

A transcript of that hearing establishes that the AUSA based her request for detention on Defendant's post-polygraph admissions regarding MV1, and did not inform Magistrate Judge David Grand of the results of the Government's MV1 video interview.  That information was, of course, highly relevant to the Magistrate's bond determination. See *United States v. Berger*, 295 U.S. 78, 88 (1935): "The United States is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose obligation in a criminal case is not that it shall win a case, but that Justice shall be done."  Magistrate Judge Grand granted the Government's motion to detain Defendant.

deny that such conduct had occurred,[4] and that Defendant's questioning session explication of his conduct with MV1 on multiple occasions supported the application of the enhancement.

### 4. The Court Orders a Continuation of the Sentencing Hearing

Almost immediately after the November 17, 2014 sentencing hearing concluded at 4:30pm, the Court recognized that the Assistant United States Attorney had failed to follow the Justice Department policy embodied in then-Attorney General Eric Holder's October 14, 2014 Order, effective immediately, that any appeal waiver contained in a Rule 11 Plea Agreement, must not contain a provision waiving a plea-convicted defendant's right to appeal on the ground of ineffective assistance of counsel. Accordingly, the next morning, November 18, 2014, the Court issued an Order "continuing" the sentencing hearing to enable the Court to correct the appeal waiver per the Holder Memo and, in addition, to expand the record to include statements and case reports that had been discussed at the November 17th hearing but that had not previously been provided to the Court. (Dkt. #40) The Court, on December 15, 2014, issued an additional Order requesting that the Government provide the Court with a copy of the

---

[4] The AUSA stated:
The fact that the child did not reveal that Defendant had engaged in inappropriate conduct is not unusual. It is commonplace for minor children who are victims of this type of abuse to deny the abuse because they're afraid, and in this instance we're talking about an eight-year-old boy who's being asked questions about this type of abuse. It wasn't unusual for him to deny the conduct. That does not mean that the conduct did not occur.
Tr. Nov. 17, 2014, AUSA, p.16.

8

video interview of minor victim 1 (MV1). (Dkt. #43)

No Judgment and Commitment Order has yet been issued in this case.

In response to the Court's two requests, the Government provided the requested items. There was no objection by the Government to the Court's order for continuation of the November 17, 2014 sentencing hearing. Indeed, the Government not only submitted the requested matter, but also offered to have the Homeland Security Investigations Special Agent Devallons Desmarets available to testify at the January continuation of the Sentencing Hearing. S.A. Desmarets was present at counsel table at the January 16, 2015 hearing. (Tr. Jan. 16, 2015 Hearing, AUSA, p.4.)

Defendant's counsel contended that during the polygraph examination, Defendant had denied touching any minor victim; that at the conclusion of the examination the examiner told Defendant that "you failed the polygraph and we want to hear what really happened." Tr. Nov. 17, 2014, Poota, p.10. Thereafter began the five-plus hours of questioning. Defense Counsel further contended that "Defendant was tired, he was sleepy, he was hungry." *Id.* Defense counsel noted that Defendant's then attorney's waiver of attendance related only to the polygraph examination.

> His mother was out in the waiting area. She was locked out. She banged on the door. . . . She had brought him in at 1:00. The government agents told her it would just be a couple hours and he'd be out . . . she is prepared to testify, if you want to hear from her, that she was banging on that door to try to figure out what was going on, and nobody answered, nobody came to the door.
> Further, Your Honor, the interrogation was not recorded.

Tr. Nov. 17, 2014, Poota, pp. 10-11.

In response, the Assistant U.S. Attorney stated that she was "prepared to present the testimony of Special Agent Desmarets who was present and observed the polygraph examination as well as participated in the interview." Tr. Nov. 17, 2014, AUSA p.15. The Government further contended that "the Defendant was offered water, snacks during the polygraph," and that at no point did Defendant say that he wanted to leave, speak to his mother or terminate the interview. Tr. Nov. 17, 2014, AUSA, pp.15-16.

Defense counsel responded, that during the post-examination questioning, Defendant "told the interrogator, 'Yes, I would like to get out of here.' And the interrogator kept on questioning him." Tr. Nov. 17, 2014, Poota, p.17.

The Court concluded that the evidence established, by a preponderance of the evidence, that the Guideline §2G2.2(b)(5) enhancement should be applied. The Court then proceeded to hear allocution by the defendant and counsel, to discuss the other relevant factors under 18 U.S.C. §3553(a).

The Assistant U.S. Attorney's response, in addition to discussing the significant negative impact on the victimized real children depicted in the many videos on Defendant's computer that he was also sharing with others, pointed out that Defendant had acted out by touching on multiple occasions, MV1 an eight-year old minor child. Tr. Nov. 17, 2014, AUSA, pp. 27-29. The Government requested a significant sentence, that considered not only the pornography, but also his "danger to children because he has acted on his desires on children by touching a minor victim." *Id*.

In response, Defense counsel noted that the Defense had not demanded a restitution hearing at which the child victims might have been called as witnesses, and that he had not only stipulated to restitution, but had also paid a victim $3000. Poota, Tr. p.30.

The Court concluded that Defendant's statements at the post examination questioning about specific conduct with MV1 – "in terms of the specificity and the name of the person and the specificity of the conduct . . . would not be made up without any basis at all" – indicated that "the case is about more than just the downloading and sharing but also conduct that requires consideration in imposing a sentence." (Tr. Nov. 17, 2014, Pp. 31-32.) As noted before, the Court imposed an 80 month sentence.

5.  The Continuation of the Sentencing Hearing on January 16, 2015

At the outset of the continuation of the sentencing hearing on January 16, 2015, the Court noted that the Government responded to the Court's orders and provided to the Court information that had previously been provided to Defendant's counsel but not to the Court.[5] (Tr. Jan. 16, 2015, pp. 5-6)

The Court then provided Defendant Fluckes with the correct post-Holder Memo version of the appeal waiver:

---

[5] The only Government submission, that had not previously been submitted to defense counsel until after the November 17, 2014 hearing, was the case report from the separate criminal case involving the older brother of MV1. Those criminal charges against MV1's older brother did not involve any criminal contact with MV1.

The Court:   So you do have the right to appeal based on ineffective assistance of counsel if you wish to. You understand that?

The Defendant:   Yes, Your Honor.

The Court:   If you cannot afford counsel to represent you on appeal, the Court will appoint counsel to represent you on appeal at no cost to yourself. You understand that?

The Defendant:   Yes, Your Honor.

The Court:   Okay. But you must let the Court know within 14 days of today whether you wish to appeal your conviction and/or sentence. You understand that?

The Defendant:   Yes, Your Honor.

Tr. Jan. 16, 2013, p.12.

The Court concluded by noting that it had ordered this hearing to assure that all relevant discovery had been provided and placed on the record, and to correct the notice to Defendant of his right to appeal. Tr. Jan. 16. 2015, pp. 13-14.

Thereafter, Defendant filed a motion for reconsideration. The Court ordered a Response from the Government. Defendant filed a Reply.

CONCLUSION

The United States Court of Appeals for the Sixth Circuit has held that an oral sentence controls over a written sentence. *United States v. Penson*, 526 F.3d 331 (6th Cir. 2008); citing, *inter alia, Sasser v. United States*, 352 F.2d 796, 797 (6th Cir. 1965) (...[I]t is true that pronouncement of sentence represents the judgment of the court and . . . the order of judgment is merely evidence of the sentence. . . .)  Further, Fed. R. Crim. P. 35(c)

states: "As used in this Rule [Correcting or Reducing a Sentence], 'sentencing' means the oral announcement of the sentence."

The Court notes that the Government did not object to the continuation of the sentencing hearing; indeed it offered documents, and testimony at the second hearing.[6] Whether this constitutes a waiver of any objection to the continuation of the sentencing hearing need not be decided, since the Court has not deviated from the sentence imposed on November 17, 2014.

The oral sentence imposed on November 17, 2014 – 80 months incarceration – after an extensive hearing and based on the evidence then before the Court, is reaffirmed. On the other hand, because the November 17, 2014 sentencing proceeding contained significant error with regard to the Holder Memorandum limitation on a Rule 11 appeal waiver, a continuation of the sentencing hearing was required.

The Court denies Defendant's Motion for Reconsideration of the 80 month sentence imposed by the Court from the bench on November 17, 2014. Because there may be a question of the expiration date of the Defendant's right to appeal on the ground of ineffective assistance of counsel, the Court will recall Defendant to Court within the next two weeks and again inform him of that right and inform him that if he is indigent,

---

[6] Page 9 of the Government's Response to Order Continuing Sentencing Hearing and Requiring United States to Produce Statements and Case Reports, concluded:
> The United States produces the attached documents in response to the Court's request following the November 17, 2014 sentencing hearing. Should the Court require additional documents or information regarding either this case or the Cope-Gass case, the United States can supplement this production with live testimony.

the Court would appoint counsel on appeal at no cost to him. After that advisory hearing, which will begin the 14 day period for filing an appeal, the Court will enter the Judgment and Commitment Order in this case.

SO ORDERED.

                                            s/Paul D. Borman
                                            PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

Dated:  June 19, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 19, 2015.

                                            s/Deborah Tofil
                                            Case Manager