UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody

## Purpose

This form is to be used if you, the petitioner, claim that your federal sentence itself is unlawful. If you believe you are being held in custody unlawfully on a federal criminal conviction, you should file a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in Federal Custody.

**Notice:** **Any false statements of a material fact may serve as a basis for prosecution and conviction for perjury.**

## Filling out the form

Fill out the attached form and answer each item completely in the space provided. Be sure all answers are typewritten or legibly handwritten.

## Additional Pages

Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief.

No citation of authorities need be furnished.

If providing briefs or arguments, they must be:
- on white 8 ½ by 11 paper, and
- securely attached to this form.

## Filing Fee

There is no fee for filing a Motion to Vacate, Correct, or Set Aside a Federal Sentence.

## Submitting Forms

When the petition is fully completed, mail the original and one (1) copy to:

Office of the Clerk
United States District Court
231 W. Lafayette Boulevard, Fifth Floor
Detroit, MI 48226

**Failure to comply with all of the instructions will result in unnecessary delays**

AO 243 (Rev. 10/07)                                                                    Page 1

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District  Eastern District of Michigan | |
|---|---|---|
| Name (under which you were convicted):<br>Daniel Jumar Fluckes | | Docket or Case No.:<br>13-20116 |
| Place of Confinement:<br>FCI Milan | Prisoner No.:<br>47617-039 | |
| UNITED STATES OF AMERICA<br><br>V. | Movant (include name under which convicted)<br><br>Daniel Jumar Fluckes | |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:
    United States District Court for the Eastern District of Michigan

    (b) Criminal docket or case number (if you know): 13-20116

2.  (a) Date of the judgment of conviction (if you know): July 14, 2015
    (b) Date of sentencing: January 16, 2015 - June 30, 2015

3.  Length of sentence: 80 months

4.  Nature of crime (all counts):  Count 1 - Distribution of Child Pornography (18 U.S.C. § 2252A(a)(2));
    Count 2 - Receipt of Child Pornography (18 U.S.C. § 2252A(a)(2)); and  Count 3 - Possession of
    Child Pornography (18 U.S.C. § 2252A(a)(5)(B)).

5.  (a) What was your plea? (Check one)
    (1) Not guilty ☐          (2) Guilty ☑          (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
    what did you plead guilty to and what did you plead not guilty to?  As part of a Rule 11 agreement,
    Petitioner plead guilty to Count 2 - Receipt of Child Pornography (18 U.S.C. § 2252A(a)(2)).

6.  If you went to trial, what kind of trial did you have? (Check one)          Jury ☐          Judge only ☐

AO 243 (Rev. 10/07)                                                                                              Page 2

7.   Did you testify at a pretrial hearing, trial, or post-trial hearing?          Yes ☐                 No ☑

8.   Did you appeal from the judgment of conviction?          Yes ☐          No ☑

9.   If you did appeal, answer the following:
     (a)  Name of court: _____
     (b)  Docket or case number (if you know): _____
     (c)  Result: _____
     (d)  Date of result (if you know): _____
     (e)  Citation to the case (if you know): _____
     (f)  Grounds raised: _____
          _____
          _____
          _____
          _____
          _____
          _____

     (g)  Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐          No ☑
          If "Yes," answer the following:
          (1)  Docket or case number (if you know): _____
          (2)  Result: _____
          _____
          (3)  Date of result (if you know): _____
          (4)  Citation to the case (if you know): _____
          (5)  Grounds raised: _____
          _____
          _____
          _____
          _____
          _____

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
     Yes ☐          No ☑

11.  If your answer to Question 10 was "Yes," give the following information:
     (a)  (1)  Name of court: _____
          (2)  Docket or case number (if you know): _____
          (3)  Date of filing (if you know): _____

AO 243 (Rev. 10/07)                                                                                     Page 3

(4)   Nature of the proceeding: _____

(5)   Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐       No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: _____

(2)   Docket of case number (if you know): _____

(3)   Date of filing (if you know): _____

(4)   Nature of the proceeding: _____

(5)   Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐       No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)   First petition:        Yes ☐        No ☐

(2)   Second petition:    Yes ☐        No ☐

AO 243 (Rev. 10/07)

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Petitioner entered a Ruled 11 Agreement in which he waived his right to appeal, except to challenge

the validity of his conviction and sentence based on the violation of his Sixth Amendment right to counsel.

Petitioner no seeks habeas relief on that basis.

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:**   Petitioner was denied his Sixth Amendment Right to Effective Assistance of Counsel

by His Attorney Sarah Steslicki

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The facts supporting ground one are set forth in Section III - A of Petitioner's Memorandum in Support

of His Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255, which is attached to

this form.

(b)  **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

Petitioner raises this claim in habeas proceedings, because claims of ineffective assistance of

counsel are properly raised in § 2255 and typically not considered in the direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

AO 243 (Rev. 10/07)                                                                                          Page 5

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3)   Did you receive a hearing on your motion, petition, or application?

    Yes ☐        No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

    Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____


**GROUND TWO:**   Petitioner was Denied His Sixth Amendment Right to Effective Assistance of Counsel

By His Attorneys Howard Siegrist and Julian Poota

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

The facts and argument in support of this argument are set forth in Section III -B of Petitioners Memorandum

in Support of his Motion to Vacate, Set Aside or Correct Sentence Under 28 USC § 2255.

_____

_____

_____

_____

_____

_____

_____

AO 243 (Rev. 10/07)                                                                                    Page 6

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

Petitioner raises this claim in habeas proceedings, because claims of ineffective assistance of
counsel are properly raised in § 2255 and typically not considered in the direct appeal.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 243 (Rev. 10/07)                                                                                          Page 7

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Three:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3)  Did you receive a hearing on your motion, petition, or application?
     Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?
     Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
     Yes ☐        No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue: _____

_____

_____

_____

**GROUND FOUR:** _____

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

AO 243 (Rev. 10/07)                                                                                           Page 9

(b) **Direct Appeal of Ground Four:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

         Yes ☐     No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why:

_____

_____

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

         Yes ☐     No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

   (3)  Did you receive a hearing on your motion, petition, or application?

         Yes ☐     No ☐

   (4)  Did you appeal from the denial of your motion, petition, or application?

         Yes ☐     No ☐

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

         Yes ☐     No ☐

   (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

AO 243 (Rev. 10/07)                                                                                           Page 10

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

_____

_____

_____

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Both of Petitioners claims were not previously raised in federal court, because claims of ineffective assistance cannot be brought in the initial district court proceeding and generally can only be raised in collateral proceedings such as those permitted under 28 USC § 2255.

_____

_____

_____

_____

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?          Yes ☐          No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

_____

_____

_____

_____

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)   At the preliminary hearing:   Sarah E. Steslicki, 30445 Northwestern Hwy Ste 230, Farmington Hills, MI 48334-3109

Howard S. Siegrist, 33228 W 12 Mile Rd # 366 Farmington Hills, MI 48334-3309; Julian Poota, 24725 W 12 Mile Rd Ste 110 Southfield, MI 48034-8345

(b)   At the arraignment and plea:   Sarah E. Steslicki, 30445 Northwestern Hwy Ste 230, Farmington Hills, MI 48334-3109 (arraignment only);

Howard S. Siegrist, 33228 W 12 Mile Rd # 366 Farmington Hills, MI 48334-3309; Julian Poota, 24725 W 12 Mile Rd Ste 110 Southfield, MI 48034-8345

(c)   At the trial:   N/A

(d)   At sentencing: Howard S. Siegrist, 33228 W 12 Mile Rd # 366 Farmington Hills, MI 48334-3309 and Julian Poota, 24725 W 12 Mile Rd Ste 110 Southfield, MI 48034-8345

AO 243 (Rev. 10/07)

(e) On appeal:  N/A

(f) In any post-conviction proceeding:  N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:  N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☐

AO 243 (Rev. 10/07)

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This petition is filed timely.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 10/07)

Therefore, movant asks that the Court grant the following relief:   Vacate his sentence

or any other relief to which movant may be entitled.


_Margaret Sina Raben_
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____.

(month, date, year)


Executed (signed) on _____ (date).


_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**PLAINTIFF,** | **CASE #: 13-20116** |
| | **HON. PAUL D. BORMAN** |
| **VS.** | |
| **DANIEL JUMAR FLUCKES**<br>**DEFENDANT.** | |

| | |
|---|---|
| AUSA Adriana Dydell | Margaret Sind Raben (P39243) |
| US Attorney's Office | Gurewitz & Raben, PLC |
| 211 W. Fort Street, Suite 2001 | 333 W. Fort Street, Suite 1400 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 226-9125 | (313) 628-4733 |
| | (313) 628-4708 |

**MEMORANDUM IN SUPPORT OF
MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
UNDER 28 USC §2255**

## I.    INTRODUCTION

This Memorandum of Law supports Petitioner Daniel Fluckes' Motion to Vacate, Correct or Set Aside His Sentence Pursuant to 28 USC § 2255. In this Motion, Mr. Fluckes submits two claims that he was denied his Sixth Amendment right to effective assistance of counsel.

First, Mr. Fluckes argues that he was denied effective assistance of counsel when his first attorney Sarah Steslicki consented to a polygraph examination of Petitioner without investigating the risk to Petitioner, failed to advise Petitioner of

the risks of a polygraph, failed to attend Mr. Fluckes' polygraph so that Mr. Fluckes could confer with her and failed to prevent his uncounseled post-exam interrogation by agents from the Department of Homeland Security. As an end result of Ms. Steslicki's conduct, Mr. Fluckes made a statement admitting improper physical touching of a minor child. Her failures prejudiced Mr. Fluckes because his statement resulted in a dramatic increase in the scoring of his sentencing guidelines and sentencing exposure and negatively impacted the sentence he received.

Second, Mr. Fluckes argues he was denied effective assistance of counsel when his successor attorneys, Howard Siegrist and Julian Poota, failed to file pretrial motions seeking to suppress or limit the use of his statements made at his post-polygraph interrogation as uncounseled and coerced. Their failure to file any motions seeking to suppress his statements and limit their use at sentencing ensured that Mr. Fluckes's challenges to these statements were not addressed on their merits by this Court, his guideline range was improperly elevated by 5 levels through the application of USSG §2G2.2(b)(5), and his statements were illegally used by this Court in determining his ultimate sentence under 18 USC § 3553(a).

Mr. Fluckes requests this Court determine that he was provided ineffective assistance by Sarah E. Steslicki and by Howard P. Siegrist and Julian Poota, vacate his sentence, and resentence Mr. Fluckes to less than 80 months.

Mr. Fluckes also requests that this Court hold an evidentiary hearing if additional fact-finding is required to determine the claims raised by him in this motion.

## II.   STATEMENT OF FACTS FROM THE RECORD AND PROCEEDINGS

On September 11, 2012, a Criminal Complaint (R1) issued against Mr. Fluckes alleging that he knowingly received and distributed child pornography in violation of 18 USC §§ 2252A(a)(2) and (a)(5)(B). (Id, Pg ID 1). In the affidavit in support of this Complaint and an arrest warrant, Special Agent Devallons Desmarets averred that on March 15, 2012, Special Agent Tim Kruithoff conducted an online investigation which revealed that the "IP address of 68.42.80.19 was sharing thirty-four files that had file names consistent with files that contained depictions of child pornography" and that "[l]aw enforcement database checks indicated that there were 99" child pornography files associated with the address. (Id, Pg ID 3). The investigators discovered that the account holder for the IP address was Petitioner's mother, Angela Fluckes. (Id, Pg ID 4).

On April 26, 2012, Homeland Security Investigations ("HSI"), obtained a search warrant for Ms. Fluckes' address in Garden City, MI. (Id, Pg ID 4-5). During the execution of the search warrant, Daniel Fluckes admitted he viewed and downloaded the child pornography. (Id, Pg ID 5-6). A forensic examination of his Acer desktop revealed 118 videos and 21 images of child pornography. (Id, Pg

ID 6). Based upon this information, an arrest warrant issued for Petitioner. (Id, Pg ID 7).

Petitioner was arrested on September 12, 2012. (R7; R8). On that same day, attorney Sarah Steslicki entered her appearance on behalf of Mr. Fluckes. (R4: Attorney Appearance), and an unsecured bond of $10,000 was set. (R6: Appearance Bond, Pg ID 16-17).

On January 29, 2013, according to reports disclosed to this Court by the Government only after the initial sentencing hearing, (R40: Order Continuing Sentencing, Pg ID 151), Mr. Fluckes was subject to a Government administered polygraph examination and post-exam interrogation which Attorney Steslicki did not attend. Just prior to the polygraph, SA Desmarets received a phone call from Ms. Steslicki's assistant. Ms. Steslicki's assistant  inquired "whether Steslicki was required to be present at the PDD exam." (Government's Exhibit A to Sealed Response to R40). According to the reports, "SA Desmarets informed the assistant that Fluckes' attorney was not required to be present at the PDD exam but it was their decision to be present or not." (Id). Ms. Steslicki did not attend the polygraph exam or the post-polygraph interrogation. Upon information and belief, Ms. Steslicki was shopping in New York City.

Mr. Fluckes and his mother, Angela Fluckes, arrived at HSI Detroit at 1:00

-4-

p.m. for the polygraph exam. Agent Desmarets escorted Mr. Fluckes to the exam room. The polygraph was conducted by Special Agent Thad Baxter. Special Agent Baxter read Mr. Fluckes his *Miranda* warnings prior to the exam and Mr. Fluckes signed a *Miranda* Waiver. This waiver form stated it applied to the pre-polygraph interview and examination. It did not refer to any post-polygraph questioning. (See: R56: Order Denying Motion for Reconsideration, Pg ID 279-280).

The polygraph report states:

> SA Baxter began the PDD at approximately 14:18 hours and concluded at approximately 14:45 hours. Test results showed that Fluckes was deceptive when questioned about sexual contact with a minor under the age of 18. During post-test interview Fluckes admitted that between the summer of 2011 and summer 2012 he had touched and caressed an 8 year old male minor victim (MVI) who was the little brother of his grad school [sic] friend he identified as Tyler Cope-Gass.
>
> Fluckes stated that he touched or fondled MV1 penis approximately 8 different times for between 10-15 seconds. Fluckes stated that the events occurred at Tyler's mother's residence and Tyler's grandmother's residence. Fluckes identified the touching as acts of opportunity. That he would touch or fondle MVI when no one was looking or when Tyler went to the bathroom....

(Government's Exhibit A to Sealed Response to R40).

The post-polygraph interview of Mr. Fluckes ended at 8:15 p.m, 5½ hours after the polygraph exam ended. According to the pre-examination worksheet

filled out by Mr. Fluckes, he had done nothing to prepare for his examination. (Government Exhibit A to Sealed Response to R40).

The HSI agents did not record their pre-interview or the polygraph or their post-polygraph interrogation of Mr. Fluckes.

Two days after Petitioner's polygraph, HSI victim witness specialist Amy Adams interviewed MV1, the minor Mr. Fluckes stated he had molested. According to Ms. Adams' notes of the interview of MV1, "MV1 did not make any disclosures of sexual abuse." (Government Exhibit A to Sealed Response to R40). Her report stated that MV1: "stated that if anyone touches his private areas were touched by an adult in his family or someone he loved, he would not tell and would keep the secret." (Id). MV1 added that he would "tell if someone at school" touched him. (Id). Ms. Adams' report states MV1 told Ms. Adams that "he had seen his brother (Tyler) looking at pictures of naked people that were kids and adults." The recorded interview of MV1 by Ms. Adams showed that MV1 affirmatively denied that Petitioner had inappropriately touched him. (R56: Order Denying Motion for Reconsideration, Pg ID 281). This recording was not disclosed to the Court or to the defense until after Mr. Fluckes had been sentenced.

The same day as MV1's interview, the Government also interviewed MV1's brother, Tyler Cope-Gass. During that interview, Cope-Gass admitted to

downloading, possessing and distributing child porn via file sharing networks.
According to the report, Cope-Gass claimed that it was Daniel Fluckes who
introduced him to child pornography and taught him how to download child
pornography using Torrent software. (Id, Exh B).

On February 2, 2013, the Government moved to revoke Mr. Fluckes' bond,
arguing that Mr. Fluckes posed "a danger to the community and a risk of flight
under 18 USC § 3142(g) and there are no conditions of release which [would]
ensure the Court of the safety of the community and the Defendant's appearance in
this matter." (R12: Emergency Motion to Revoke Order of Bond, Pg ID 30). The
Government's motion did not refer to and did not disclose any information from
the interview of MV1 on February 1, 2013, including MV1's denial that Defendant
had touched him. Attorney Steslicki did not file a response to the Government's
motion to revoke bond.

On February 4, 2013, Magistrate Judge David R. Grand held a hearing on
the Government's motion. (R19: TR 2/4/13, Bond Hearing, Pg ID 56-84). At the
hearing, AUSA Adriana Dydell reiterated the statements Mr. Fluckes made at his
post-exam interrogation (Id, Pg ID 61-62). AUSA Dydell also added:

> as a result of this additional information, the Defendant is
> – is facing far more serious penalties than he was prior to
> the Government's learning this new information

> That is partly based on the fact that the United States Sentencing Guidelines allow for an offense level enhancement based on this type of conduct.
>
> ***
>
> The Defendant has already admitted to possessing, receiving and distributing a substantial amount of child pornography, and this is even worse now that it's come to light that Defendant has actually acted on his sexual interests toward children by harming a minor child.

(Id, Pg ID 63-64). AUSA Dydell stated Petitioner's guideline range was now increased from 51-63 months to 121-151 months, a "six-year increase," "more than double."(Id, 63-65).

In response to the Government's arguments to revoke Mr. Fluckes' bond, Ms. Steslicki stated she had "no understanding of [the allegations] when they happened" and that she "was not present while these statements were taken." (Id, Pg ID 66). She further stated that she did "know that it happened prior to September, before the Defendant was actually charged."  (Id). She also stated that "the enhancement of the charge or the possible sentence is not going to change the seriousness of it. I mean, obviously it was -- it was serious before." (Id). Ms. Steslicki also took the position that no statements had taken been made: "My understanding in talking is, those – again, there's no statements. Defendant gave no statements. I was not present with the Defendant." (Id, Pg ID 67).

At the conclusion of the bond hearing, and relying on the new information

the Government obtained during Mr. Fluckes's post-polygraph interrogation, Magistrate Judge Grant revoked Mr. Fluckes' bond. (Id, Pg ID 79-84; R14: Order Granting Emergency Motion to Revoke Bond, Pg ID 41-46).

On February 12, 2012, Mr. Fluckes was indicted on three offenses: Distribution of Child Pornography in violation of 18 USC § 2252A(a)(2) (Count One); Receipt and Distribution of Child Pornography in violation of 18 USC § 2252A(a)(2) (Count Two); and Possession of Child Pornography in violation of 18 USC § 2252A(a)(5)(B) (Count Three).

On February 22, 2013, Howard Siegrist filed a consent to substitute as attorney of record for Mr. Fluckes. (R16). On March 1, 2013, Julian Poota entered an appearance as co-counsel for Mr. Fluckes. (R18: Appearance of Julian Poota, Pg ID 55).

At a status conference held on April 3, 2013, Attorneys Siegrist and Poota requested and received a 90 day adjournment of the trial date and told the Court:

> MR. SIEGRIST: The other issue, Judge, and it's -- I probably should have brought that before the one I just brought, but Mr. Fluckes originally, Your Honor, was out on a OR bond with conditions such as a tether and under house arrest, that he had to stay in his house between 5:00 a.m. to 5:00 p.m. with his parents and his sister, who are in the courtroom. Unfortunately, after a number of weeks that he complied, the government had him take a polygraph at which time – and this is not – I'm not trying to say anything derogatory about the government or I'm not trying to say

anything sneaky about them, but the fact is, Your Honor, that his mother brought him to the facility where they gave him the polygraph. He was there from ten after 1:00 to ten to 9:00, so almost eight hours. I don't know about food, water, using the bathroom or anything else. The problem I have is prior counsel was in New York and did not attend, and I realize she couldn't be right in the room

THE COURT: Right.

MR. SIEGRIST: at the time the test was being given. But certainly it would have been better for the Defendant if she was at least in the facility where the polygraph was being given. What happened is, Your Honor, because of a – not having a counsel present or having right to a counsel both pre and post polygraph during that eight hours, he made an admission to something else which wasn't part of the indictment, what he's being charged with, and because of that, they took his personal bond with the restrictions of house arrest and tether away and they had an additional detention hearing in Ann Arbor before a magistrate judge at which time they took his bond away, and he's been in detention now for a number of weeks.

I have some real concern with what happened, Your Honor, and I –

THE COURT: Okay. If you want to motion up anything, I'm here, and we'll deal with it. So that's how we do it.

(R59: TR 4/3/13, Status Conference, Pg ID 311-313). Attorneys Siegrist and Poota

did not file any motion to suppress or limit Petitioner's statements.

On September 25, 2013, Mr. Siegrist informed the court that Petitioner

intended to enter a Rule 11 agreement and requested an adjournment of the plea

deadline to meet with Mr. Fluckes and obtain medical and psychiatric records and

to have an independent psychiatric evaluation performed on Mr. Fluckes. (R61: TR 9/25/13, Status Conference, Pg ID 330-332).

At a status conference held on a plea cutoff date of November 22, 2013, AUSA Dydell argued that Mr. Fluckes' uncounseled polygraph exam and post-exam interrogation supported a five-level enhancement in the scoring of the guidelines. Mr. Siegrist again expressed his knowledge of the circumstances of Mr. Fluckes' interview, stating:

> Our position, Your Honor, his attorney was not us, was in New York shopping while our client was by himself with his mother in a room for nine hours, no food, no water . . . And he would have done anything or said anything to get out of there.

(R62: TR 11/22/13, Status Conference, Pg ID 342).

Mr. Siegrist also mentioned he was waiting for the report from the psychiatrist. Mr. Poota stated the report would be used for sentencing. The Court agreed to adjourn the plea cutoff, stating that the reports could be relevant to sentencing and also to the issue of whether the touching happened. (Id, Pg ID 343).

On February 21, 2014, Mr. Fluckes entered a guilty plea to Count Two of the Indictment, Receipt and Distribution of Child Pornography in violation of 18 USC § 2252A(a)(2). (R63: TR 2/21/14, Pg ID; R31: Rule 11 Agreement, Pg ID

-11-

102)[1]. In the Rule 11, the parties disagreed upon the applicability of the +5 enhancement in USSG §2G2.2(b)(5), which the Government argued was appropriate because Mr. Fluckes engaged "in a pattern of activity involving the sexual abuse or exploitation of a minor." (R31: Rule 11 Agreement, Pg ID 104-105). The Government advocated for a guideline range of 262-327 months, capped at the statutory maximum of 240 months. Attorneys Siegrist and Poota argued the +5 should not apply and the guideline range was 151-188 months. (Id). The Rule 11 Agreement included the mandatory minimum sentence of 60 months and a mandatory term of supervised release of at least 5 years.

On October 15, 2014, Mr. Poota filed Mr. Fluckes' Sentencing Memorandum under seal. In the Memorandum, Mr. Poota reiterated his argument that the +5 level enhancement of Mr. Fluckes' guideline range pursuant to USSG §2G2.2(b)(5) was inappropriate because the Government "coerced" him to say what they wanted to hear. (Defendant's Sealed Sentencing Memo pp. 4-5). These arguments were also presented in the defense objections to the Presentence Investigation Report's scoring of §2G2.2(b)(5). In addition, Mr. Poota informed

---

[1] In the transcript (R63, Pg ID 361), the Court asked Mr. Fluckes: "Did anyone threaten or coerce you to plead guilty?" Mr. Fluckes answered, "Yes, Your Honor." This may be a transcription error but Mr. Fluckes is not raising any issue about the validity of his plea.

-12-

the Court that "the alleged victim, MVI, was subsequently interviewed on February 1, 2013 (by way of a child forensic interview conducted by the authorities), and he did not make any disclosures of sexual abuse against Defendant." (Id, p. 5). Siegrist and Poota also "demand[ed] a hearing on the voluntariness of any of [Mr. Fluckes'] alleged statements during [the January 29, 2013] interrogation." (Id, p. 6).

On October 16, 2014, the Government filed its Sentencing Memorandum. (R37: Gov't Sentencing Memo). In its Memorandum, the Government argued that Mr. Fluckes' January 29, 2013 interrogation provided a sufficient basis for the application of USSG §2G2.2(b)(5) and that the guideline range was 262-327 months.

On November 17, 2014, the Court held a sentencing hearing. (R48: TR 11/14/14, Pg ID 199-234). At the hearing, Mr. Poota again challenged the applicability of the 5 level enhancement under USSG §2G2.2(b)(5). Mr. Poota argued that the enhancement should not apply because:

> . . . the alleged touching here never happened. It was an imaginary allegation that the Defendant felt coerced into making in a post-polygraph interrogation that occurred on January 29th, 2013. Defendant's counsel was not present. She was out of town -- his then counsel, who is no longer on the case, was out of town in New York. We believe now that she, based on information we obtained, was shopping. She did not consult, did not meet with the Defendant prior

> to him going in for the polygraph or the interrogation. The
> Defendant had only five hours of sleep the night before. He
> was 19 years of age at the time of the polygraph and
> post-polygraph interrogation. He had not eaten for 16 and
> a half hours prior to the start of the polygraph and 24 hours
> by the time it had completed.

(Id, Pg ID 207-208). Mr Poota further explained that:

> the polygraph began around 1:00 p.m. on January 29th. It
> lasted for about two hours. The Defendant denied touching
> any minor victim during the polygraph. The polygraph
> examiner at the conclusion told the Defendant that "you
> failed the polygraph and we want to hear what really
> happened." And the Defendant was tired, he was sleepy, he
> was hungry. He was not allowed to consult with his
> attorney –

(Id, Pg ID 208). Mr. Poota also explained that Mr. Fluckes "has some learning

disabilities" and was diagnosed with "speech and learning disorders" and had

"special classes" in high school and middle school. (Id, Pg ID 208-209). The Court

verified that none of the issues regarding Mr. Fluckes' polygraph and interrogation

had been properly raised under FRCrP Rule 12 (Pg ID 215-216). After hearing all

of the parties' arguments, the Court adopted the +5 level enhancement but

sentenced Mr. Fluckes to 80 months custody, a special assessment of $100, and

restitution of $3,000. The Court did not order a term of supervised release

although the Court did order conditions of supervision. (Id, Pg ID 230-233).

The day after sentencing, this Court entered an order continuing sentencing

-14-

and requiring the Government to produce statements and any and all case reports related to the February 1, 2013 interview of MV1; copies of reports relating to *United States v. Tyler Wayne Cope-Gass*, 13-CR-20771, that referenced MV1; and case reports discussing Mr. Fluckes' polygraph examination and post-polygraph interview. (R40: Order Continuing Sentencing, Pg ID 151). In its Order, the Court explained that, after learning that MV1 stated that Petitioner "had not sexually abused him, but that his older brother Tyler had abused him," (Id, Pg ID 151), "this Court should have, but did not stop the proceedings and request that the Government provide a copy of all of that minor victim's statements at the February 1, 2013 [interview]." (Id, Pg ID 151-152).

On December 5, 2014, Attorneys Poota and Siegrist filed a supplemental memorandum (R41: Supplemental Memorandum) informing the Court of a stipulated order which allowed Tyler Cope-Gass to attend his mother's wedding. (Id, Pg ID 153). According to the stipulation Cope-Gass' younger brother, MV1, was "14 years of age." Because of this fact, they argued that the credibility of Petitioner's confession was undermined because he admitted to "touching an eight year old boy between the summer of 2011 and the summer of 2012.

> Using basic math, Dylan (the alleged victim) would have been 11 or 12 years old in the summer of 2011 or the summer of 2012. This contradicts and undermines Mr. Fluckes' confession and the Government's representation

of an eight year old being touched. Mr. Fluckes recanted the confession because--- as previously stated---he was coerced and worn down. (See Pages 4-5 of Defendant's Sentencing Memorandum1, e.g. Mr. Fluckes was 19 years old at the time; the polygraph and post-polygraph interrogation lasted from 1:00 PM to 8:30PM; Mr. Fluckes had only 5 hours of sleep the night before; and Mr. Fluckes had not eaten for 24 hours by the conclusion of the interrogation---per the information on the intake form filled out by the interrogator). His then attorney was not present and Mr. Fluckes was not allowed to have access to anyone while in the interrogation room.

(Id, Pg ID 154).

Attorneys Poota and Siegrist also argued against the application of 2G2.2(b)(5) stating that MV1 "made no disclosures of sexual abuse against Mr. Fluckes," (Id, Pg ID 155), and, pursuant to *Brady v. Maryland*, 373 US 83 (1963), requested disclosure of the video recording of the interview of MV1. Finally, they requested that this Court impose the 60 month sentence they initially requested at sentencing. (Id, Pg ID 156).

On December 8, 2014, the Government filed its response to this Court's orders continuing sentencing and provided the materials referenced during Mr. Fluckes' sentencing.

On January 16, 2015, this Court held a continued sentencing hearing. (R46: TR 1/23/15, Sentencing Hearing, Pg ID 169-183). At the hearing, the Court noted Poota and Siegrist's failure to file a motion seeking to suppress or limit the use of

Mr. Fluckes' statements:

> I note that defense counsel, Mr. Siegrist and Mr. Poota, came on the case after the indictment in February of 2013, and they were there for the period which would have allowed filing of various motions. So that was on their watch. There were no 12 – Rule 12(b) motions filed in this case.

(Id, Pg ID 174). The Court also noted Ms. Steslicki's failure to attend Mr. Fluckes'

polygraph examination and post-exam interrogation, that no subsequent *Miranda*

warning was given to Mr. Fluckes after the polygraph, and that Mr. Fluckes was

not informed he could leave after the polygraph examination. (Id, Pg ID 174-178).

After summarizing the records it had requested from the Government, this

Court once again stated that "there was no motion to suppress filed" and noted:

> The Court did receive and has listened to and watched the video with regard to the victim of that, and I think it's clear that the victim did not say that he was touched by the Defendant.

(Id, Pg ID 179).

In response to statements from Mr. Poota stating that he and Mr. Siegrist

"presume[d[" that the issue of the application of USSG §2G2.2(b)(5) would be

"litigated as part of the sentencing," this Court stated:

> Well, we did deal with that at the sentencing hearing. There is – you had information, you had the – all the sheets. Based on the argument at that hearing, I ruled with regard to that. At this time I cannot deal with the issue of whether,

-17-

for example, Counsel should have filed a motion to suppress, statements made which form at the – after the polygraph interview, so I could not rule on that issue, and that is why, based on what was presented at the hearing and at that point those statements were still in play because no motion to suppress had been filed, I made the ruling that I did make at that time. And so at the same time I wanted to go over the discovery to make sure that everything was provided to the defense and also to correct the right to appeal which applies in this case given Attorney General Holder and Deputy Attorney General Cole, C-O-L-E's memorandum of October 14th, 2014. So at this point this will conclude the sentencing hearing.

(Id, Pg ID 180-181). The Court did not change Mr. Fluckes' original sentence. (Id, Pg ID 182).

On January 27, 2015, Attorneys Poota and Siegrist filed a Motion for Reconsideration (R47) of the Court's ruling, asking the Court to "affirmatively rule" on the issue of the application of §2G2.2(b)(5) and reschedule a new sentencing hearing. (Id, Pg ID 197-198). They also emphasized that MV1 affirmatively denied that Petitioner had inappropriately touched him. (Id, Pg ID 196-197). On June 19, 2015, this Court entered an Order denying the Motion for Reconsideration. (R56).

The Court entered its Judgment on July 14, 2015. (R58: Judgment). The Judgment states Mr. Fluckes is sentenced to 80 months custody and a term of 60 months supervised release. (Id).

-18-

Mr. Fluckes did not appeal his conviction or sentence.

## III.   GENERAL LEGAL PRINCIPLES

### A.   28 USC §2255

Under 28 USC §2255, a person in custody as a result of a federal conviction may petition the court which sentenced him to vacate, set aside, or correct his sentence when the sentence was imposed in violation of the Constitution or is subject to collateral attack. 28 USC §2255(a).

To obtain relief under §2255, a petitioner must show a violation of his constitutional rights and substantial prejudice or a fundamental miscarriage of justice. *Hill v. United* States, 368 US 424, 428 (1962); *Weinberger v. United States*, 268 F3d 346, 351 (6th Cir, 2001).  To prevail on a §2255 claim of constitutional error, the error must have had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 US 619, 637-38 (1993).

A claim of ineffective assistance of counsel may be brought in a direct appeal or collateral proceeding under 28 USC §2255. *Massaro v. United States*, 538 US 500, 504 (2003). The Sixth Circuit clearly prefers that claims of ineffective assistance of counsel be raised under §2255. *United States v. Tucker*, 90 F3d 135, 143 (6th Cir, 1996); *United States v. Bradley*, 400 F3d 459, 462 (6th Cir, 2005).

A petitioner who files a motion under 28 USC §2255 is entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 USC §2255. A hearing is mandatory unless the motion and the records of the case conclusively show that the petitioner is not entitled to relief. *Fontaine v. United States*, 411 US 213, 216 (1973) (citation omitted). When the trial court is the court that also reviews the §2255 proceedings, the court may rely on its recollections of the events at trial in ruling on the collateral issues. *Blanton v. United States*, 94 F3d 237, 235 (6th Cir, 1996).  When there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims. *Turner v. United States*, 183 F3d 474, 477 (6th Cir, 1999). A §2255 petitioner's burden for establishing his entitlement to an evidentiary hearing is "relatively light." *Id* at 477.

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The guarantee of counsel includes counsel at "critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere

-20-

formality," i.e., "critical stages of the proceedings." *United States v. Wade*, 388 U.S. 218, 224 (1967).

The Sixth Amendment right to counsel is the right to the effective assistance of counsel and this right extends to the plea negotiation process. *McMann v. Richardson*, 397 US 759, 771; 90 S Ct 1441; 25 LEd 2d 763 (1960).

The test for determining ineffective assistance is the two part test enunciated in *Strickland v. Washington*, 466 US 668, 687 (1984): whether "counsel's performance was deficient" and, if so, whether counsel's "deficient performance prejudiced the defense." Counsel's performance is deficient if it falls below an "objective standard of reasonableness" under "prevailing professional norms." *Id*. at 688. The defendant is prejudiced where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The "essential question" is "whether better lawyering would have produced a different result." *McQueen v. Scroggy*, 99 F3d 1302, 1311 (1996).

One of counsel's most basic duties is the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id* at 691.  Counsel also has an "overarching duty to

advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id*. at 688.

As part of that "overarching duty," defense counsel is charged with advocating the interests of their client, including, but not limited to, filing pretrial motions and being present and advocating on behalf of their client during all critical stages of the proceedings. *Missouri v. Frye*, 132 S Ct 1399 (2012); *Lafler v. Cooper*, 132 S Ct 1376 (2012). An attorney's lack of understanding of the law relevant to the case falls below an "objective standard of reasonableness." *Washington v. Hofbauer*, 228 F3d 689, 704-05 (6th Cir, 2000); *Rachel v Bordenkircher,* 590 F2d 200, 204 (6th Cir, 1978).

## IV.  ARGUMENT

### A.  MR. FLUCKES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN ATTORNEY SARAH STESLICKI FAILED TO INVESTIGATE MR. FLUCKES' SUITABILITY FOR A POLYGRAPH, FAILED TO ATTEND PETITIONER'S POLYGRAPH EXAMINATION, AND FAILED TO PREVENT HIS POST-EXAM INTERROGATION.

Attorney Sarah Steslicki consented to the Government's polygraph examination of Mr. Fluckes without pretesting him, failed to advise Mr. Fluckes of the risks of participating in a polygraph examination, failed to attend the polygraph examination so as to be available if Mr. Fluckes needed her, and failed

to prevent the post-exam interrogation of Mr. Fluckes. Any and all of this conduct falls below any "objective standard of reasonableness" or "prevailing professional norms" for criminal defense practitioners. Even applying the heavy measure of deference usually accorded to the judgments an attorney makes in a case, Ms. Steslicki's conduct regarding Mr. Fluckes' polygraph examination fell far below the level of reasonably competent representation guaranteed by the Sixth Amendment.

There is no evidence that Steslicki investigated or made a reasonable decision not to investigate the critical decision to allow Government agents to examine and interview Mr. Fluckes. See also: *Thomas-Bey v. Smith*, 869 F Supp 1214, 1226 (D. Md. 1994), *aff'd sub nom. Thomas-Bey v. Nuth*, 67 F3d 296 (4th Cir. 1995)("no reasonable defense attorney should ever blindly consent to a prosecution request for a psychiatric interview without considering the identity of the interviewer, and the purpose and legal implications of the interview."). Whether her conduct was based on ignorance or deliberate decisions to deprive Mr. Fluckes of his right to counsel doesn't matter.

Ms. Steslicki's consent to Mr. Fluckes' polygraph and her subsequent decision not to attend the examination and prevent the post-exam interrogation are inexplicable when viewed in the context of prevailing professional norms. See

*Thomas-Bey v. Smith* at 1226 (rejecting view that an attorneys "desperate hope" that "something favorable" would result from such an interview is "neither strategic nor reasonable."). At the time of the polygraph examination, Mr. Fluckes had already confessed to receiving and possessing child pornography. Mr. Fluckes had not yet been indicted. Upon information and belief, the parties were discussing a plea and Ms. Steslicki was seeking a plea to a lesser offense or possibly a dismissal. The Government was concerned whether Mr. Fluckes had engaged in any inappropriate touching.

Any attorney with even minimal experience in criminal cases would know that the police polygraph has three parts: (1) the initial interview which includes the explanation of the exact questions to be asked, (2) the questioning, and (3) a post-exam "interview," which usually occurs even when an examinee does not "fail" and which becomes an interrogation if the client "fails" a question. Any attorney with even minimal experience in criminal cases would understood the inherent risk to Mr. Fluckes of the Government polygraph. Competent defense counsel knows a government polygraph is a high-risk method of determining a client's truthfulness. Furthermore, Ms. Steslicki should have known of the potential +5 level enhancement of USSG §2G2.2(b)(5) for even possession of child pornography if "defendant engaged in a pattern of activity involving the

-24-

sexual abuse of exploitation of a minor." Ms. Steslicki should have had Mr. Fluckes take a private polygraph to determine his likelihood of "passing" before she agreed to have him examined by the Government.

Furthermore, when she consented to a polygraph examination of Mr. Fluckes, Ms. Steslicki should have also known that the agents would question her client following the exam and that Mr. Fluckes, who has some limited cognitive abilities, might incriminate himself in some way. No competent attorney would have risked letting the Government question their client if the Government claimed a polygraph examination "failure" because that questioning then became an interrogation to obtain information that would further incriminate the client.

In his Affidavit submitted in support of this Motion, Mr. Fluckes avers Ms. Steslicki did not talk to him about taking the Government's polygraph or a private polygraph was conducted. (Exhibit 1: Affidavit of Daniel Jumar Fluckes, ¶¶ 7-8). He avers he had no idea how a polygraph was conducted or that he could refuse to talk to the operator after the questioning ended. (Id, ¶¶ 14, 16). He avers he was not advised of his *Miranda* warnings when the operator began questioning about his "failure." (Id, ¶15). He avers an almost complete lack of communication over the five months of his representation by Ms. Steslicki. (Id, ¶¶ 7-8, 22-23).

As a direct result of Ms. Steslicki's deficient performance, Mr. Fluckes was

subject to an interrogation in which Mr. Fluckes told government agents that he had engaged in the inappropriate touching of an 8 year old child.

Mr. Fluckes was prejudiced by Ms. Steslicki's deficient performance. Had he not been subjected to a government polygraph, he might have remained charged with receiving and distributing child pornography with its 5 year mandatory minimum. However, but for the polygraph, he would not have made the statements which inflated his guideline range by 5 levels and were a critical reason why he received a sentence above the mandatory minimum. Mr. Fluckes' statements after his polygraph provided the sole basis for a 5-level enhancement to his sentencing guidelines under USSG § 2G2.2(b)(5). This Court applied this enhancement at sentencing. (R48: TR 11/17/14, Pg ID 229-230). Those guidelines are the "starting point and the initial benchmark," *Gall v. United States*, 552 US 38, 49, (2007), for the Court's ultimate sentence of 80 months.

Mr. Fluckes" statements also were a factor when the Court evaluated the sentencing factors in Section 3553(a). The Government advocated for a "significant term of imprisonment commensurate with [Mr. Fluckes'] actions and in consideration of the 240 month Guideline Range," (R37: Government Sentencing Memo, Pg ID 132-33), based in large part on Mr. Fluckes' statements in his post-exam interrogation. (Id, Pg ID 135-138; 140; 144-145). His statements

were the Government's primary argument that a substantial sentence was "a necessity to protect the public from the Defendant in the future," (Id, 144-145), and Mr. Fluckes deserved a "more significant sentence," (Id, Pg ID 145), than other individuals convicted of receipt of child pornography because Mr. Fluckes "acted on his sexual attraction to children." (Id). It is abundantly clear that Ms. Steslicki's deficient performance in consenting to the polygraph exam without determining Mr. Fluckes' risks, failing to advise Mr. Fluckes about the risks of such an exam, and her failure to attend the exam and be available to Mr. Fluckes, and to prevent the post-exam interrogation prejudiced Mr. Fluckes and there is "a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland*, 466 US at 694. Mr. Fluckes' sentence, although the result of a variance, was clearly based upon his statements that were a direct product of Ms. Steslicki's failure to provide effective assistance of counsel.

Another judge of this Court has held that counsel's failure to attend a defendant's polygraph is deficient performance under *Strickland*. Judge David M. Lawson addressed a failure-to-attend claim as a Sixth Amendment violation of the right to counsel. *Hannah v. Bock*, 447 F Supp 2d 798 (ED MI, 2006). In *Hannah*, the §2254 petitioner argued that his attorney failed to protect his Sixth

Amendment right to counsel when the attorney did not attend the petitioner's

polygraph examination. 447 F Supp 2d at 805. Judge Lawson cited the *Strickland*

standard for deficient performance. *Id* at 805. Hannah's defense attorney had

testified at a state evidentiary hearing that he arranged for a polygraph because

Hannah had maintained his innocence. The attorney claimed he had an oral

agreement with the prosecutor and police that there would be no "interrogation" of

Hannah before or after the polygraph. *Id* at 806. The attorney believed this

agreement eliminated the need for him to be present to represent his client during

the examination. *Id*. As relevant to Mr. Fluckes' arguments in the instant case,

Judge Lawson stated:

> Predictably, the polygraph interrogator questioned the
> petitioner before and after the test was administered, and,
> perhaps less predictably but certainly foreseeably, the
> petitioner confessed to the crime when confronted with the
> unfavorable test results . . . there can be little doubt that
> sound practice requires a defendant's lawyer to be present
> when a post-arraignment interrogation is scheduled to
> occur. It is inconceivable that competent defense counsel
> would conclude that his client could soldier through on his
> own.
>
> * * *
>
> . . . As the Supreme Court has explained, "[t]he relevant
> question is not whether counsel's choices were strategic,
> but whether they were reasonable." *Roe v. Flores-Ortega*,
> 528 US 470, 481, 120 S Ct 1029, 145 LEd 2d 985 (2000).
> There was no strategic advantage to be gained from not
> attending the session, and the decision not to appear and
> provide some level of representation cannot be

characterized as anything but unsound.

\* \* \*

Nor could the petitioner's attorney reasonably have believed that no questioning would occur before and after the administration of the test. The polygraph interrogation procedures should be well known to the garden-variety criminal practitioner. . .

\* \* \*

[This] Court concludes in this case that state trial counsel's failure to accmpany his client to a post-arraignment police interrogation at which a polygraph test was to have been administered "was not a reasonable strategic decision entitled to deference." *Moss v. Hofbauer*, 286 F3d 851, 865 (6th Cir, 2002). . . it constitutes performance that falls below the level of objective reasonableness under prevailing professional norms.

*Id* at 806-07.

As in *Hannah*, so too here. For the reasons stated above, all of Ms. Steslicki's conduct regarding Mr. Fluckes' polygraph fell far below the objective standards of reasonableness under prevailing norms expected of defense attorneys. Her deficient performance had a clear, direct, and prejudicial impact on the outcome of the proceedings because the information obtained during the post-exam interrogation of Mr. Fluckes increased the sentence Mr. Fluckes eventually received. "Better lawyering" would have produce a "different result" for Mr. Fluckes. Because Mr. Fluckes' Sixth Amendment right to effective assistance of counsel was violated, his sentence should be vacated.

### B.   MR. FLUCKES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN ATTORNEYS HOWARD SIEGRIST AND JULIAN POOTA FAILED TO FILE PRE-TRIAL MOTIONS SEEKING TO SUPPRESS HIS STATEMENTS AS COERCED AND INVOLUNTARY AND INADMISSIBLE.

Attorneys Howard Siegrist and Julian Poota were ineffective when they failed to file a pre-trial motion seeking to suppress Mr. Fluckes' statements as coerced and involuntary. The records in this case show their failure to file was not based on a tactical decision of these successor counsel or a reasonable belief on their part that the issues to be raised lacked merit. Attorneys Siegrist and Poota simply ignored the basic requirements of FRCrP 12(b)(3)(C) which requires motions to suppress to be filed prior to trial or the entry of a guilty plea, based on their erroneous understanding that they could successfully challenge the admissibility and reliability of Mr. Fluckes' statements at his sentencing. (R46: TR 1/23/15, Sentencing Hearing, Pg ID 180-181).

This Court made it clear that their failure to file a timely motion to suppress made a difference in the outcome of the case when it informed Poota and Siegrist that, because of their failure to file a motion to suppress, it "could not rule on" the issue of the admissibility or use of Mr. Fluckes' statements and explained that "because no motion to suppress had been filed, I made the ruling that I did make at that time." (Id). This is not a case where counsel did not choose, strategically or otherwise, one line of defense over another. Rather, Poota and Siegrest here

clearly abdicated their responsibility to effectively advocate their client's cause by not properly raising and litigating their claims that Mr. Fluckes' statements during the post-exam interrogation were coerced and thereby involuntary and inadmissible for use at Mr. Fluckes' sentencing.

There were at least three grounds for suppressing Mr. Fluckes' statements that could have been raised in a timely pretrial motions.

### 1. The Government's Post-Exam Interrogation of Mr. Fluckes Violated His Sixth Amendment Right to Counsel.

The attorneys could have argued that the Government's post-exam interrogation of Mr. Fluckes violated his Sixth Amendment right to counsel. Mr. Fluckes' Sixth Amendment right to counsel attached automatically upon the initiation of the formal charges against him. *See Brewer v. Williams*, 430 US 387, 404 (1977)("[T]he right to counsel does not depend upon a request by the defendant.").

Mr. Fluckes' could waive his right to counsel so long as that waiver was voluntary, knowing, and intelligent and not the result of coercion or intimidation. *Patterson v. Illinois*, 487 US 285, 292, n 4 (1988). Advising a defendant of his *Miranda* rights is sufficient to also advise a defendant of his Sixth Amendment right to counsel. *Montejo v. Louisiana*, 556 US 778 (2009). But Mr. Fluckes' pre-polygraph *Miranda* waiver form referred only to a waiver during the polygraph

-31-

interview and the polygraph examination. It did not include any consent or waiver of his rights during a post-exam interrogation. As a result, Mr. Fluckes' Sixth Amendment right to the assistance of counsel resumed intact after the examination concluded. For this reason alone, Mr. Fluckes' statements could have been suppressed and not considered at sentencing for purposes of scoring his guidelines or under 18 USC § 3553(a).

2. **The Government's Post-Exam Interrogation Violated Mr. Fluckes' Rights Under *Miranda v. Arizona* Because His *Miranda* Waiver Was Not a Knowing, Understanding and Voluntary Waiver of his Fifth Amendment Rights.**

For similar reasons, attorneys Poota and Siegrist could have argued that the Government's post-exam interrogation of Mr. Fluckes also violated his rights under *Miranda v. Arizona*, 384 US 436, 448-50 (1966), because the waiver of rights he signed was only as to a pre-polygraph interview and polygraph examination. As Agent Desmarets has already admitted, no subsequent *Miranda* waiver was given at the conclusion of the exam and he never informed Mr. Fluckes that he was free to leave. For this reason alone, Mr. Fluckes' statements could have been suppressed and not considered by this Court for sentencing purposes.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Dickerson v. United States*, the

Supreme Court acknowledged that the Fifth Amendment right against self-incrimination is required to ensure that a statement is voluntary and admissible. 530 US 428, 433 (2000). In *Miranda*, the Supreme Court determined that the Fifth and Fourteenth Amendment prohibition against compelled self-incrimination require that any custodial interrogation be preceded by advice that the person has the right to remain silent and the right to the presence of an attorney. 384 US at 479. When the police fail to provide *Miranda* warnings, court will presume the privilege against self-incrimination has not been intelligently waived and any statement is not voluntary. *Miranda*, 384 US at 457.

An individual may "voluntarily, knowingly, and intelligently waives his [Fifth Amendment] constitutional privilege." *Colorado v. Spring*, 479 US 567, 573 (1987) (quoting *Miranda, Id.*). The government bears the burden of proving that a defendant "voluntarily, knowingly, and intelligently waived his right to silence and counsel." *United States v. Bentley*, 726 F2d 1124, 1126 (1984). The test is the "totality of the circumstances." *Brown v. Illinois*, 422 US 590 (1975). In considering the totality of the circumstances, a court should consider: (1) police coercion; (2) the length of the interrogation; (3) the location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspects's physical condition and mental health; and (8) whether the

-33-

suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 US 680, 693-94. (1993). Coercive plea activity is a necessary element. *Colorado v. Connelly*, 479 US 157, 167 (1986).

Throughout this record, Attorneys Siegrist and Poota repeatedly argued the following: Mr. Fluckes was 19 years of age with no prior experience with the criminal justice system. Ms. Steslicki failed to advise him about what to expect in a Government polygraph examination, did nothing to help him prepare for what he would be subjected to, and failed to attend. Mr. Fluckes had significant cognitive issues and was placed in special education classes in middle school and high school. His ability to comprehend the nature of the waiver, the nature of the polygraph exam and the significance of the subsequent interview was severely limited. Mr. Fluckes had very limited sleep, food, and water prior to his more than 8 hour interaction with the agents, and little respite during the exam.

When all of these factors are considered, it is clear that the attorneys could have argued that Mr. Fluckes' pre-exam waiver was invalid. Attorneys Poota and Siegrist were ineffective for failing to file a motion seeking to suppress his statements under this basis and failing to request an evidentiary hearing to flesh out their assertions of the facts.

### 3. Mr. Fluckes' Statements in the Post-Exam Interrogation Were Coerced in Violation of the Fifth Amendment.

Attorneys Poota and Siegrist could have argued that Mr. Fluckes'
statements in the post-exam interrogation were coerced in violation of the Fifth
Amendment. Attorney Siegrist and Poota's failure to file a motion seeking to
suppress his statement and for an evidentiary hearing on this basis denied Mr.
Fluckes his right to effective assistance of counsel.

The Fifth Amendment provides that no person "shall be compelled in any
criminal case to be a witness against himself." U.S. CONST. AMEND. V. A
confession is only voluntary when it is the "product of free and rational choice."
*United States v. Murphy*, 763 F2d 202 (6th Cir. 1985). In determining whether the
defendant's will was overborne by physical and psychological pressures of
interrogation so as to be coerced, "courts look to the totality of the circumstances
surrounding the confession and determine their psychological impact on the
accused's ability to resist pressures to confess." *Id* at 205; *United States v. Haynes*,
301 F3d 669, 684 (6th Cir. 2002)("An admission is deemed to be coerced when the
conduct of law enforcement officials is such as to overbear the accused's will to
resist, citing *Ledbetter v. Edwards*, 35 F3d 1062, 1067 (6th Cir. 1994."].
Unconstitutional coercion may be mental as well as physical. *Arizona v.
Fulminante*, 499 US 279, 287 (1991)).

Custodial interrogation is questioning after a person has been taken into

custody or otherwise deprived of his freedom of action in any significant way. *Miranda*, 384 at 444. Two inquires are essential: (1) what were the circumstances surrounding the interrogation, and (2) would a reasonable person have felt he was not at liberty to termination the interrogation and leave. *Thompson v. Keohane*, 516 US 99, 113 (1995). *Miranda* warnings are only required when a suspect is in custody. *Thompson*, 516 US at 102.

The determination of custody is based on the objective circumstances of the interrogation, not the subjective view of law enforcement or the person being questioned. *Stansbury v. California*, 511 US 318, 323 (1994). The Sixth Circuit has identified four factors to be considered when a court considers the question of custody: (1) the place of the interview; (2) the length and manner of questioning; (3) the degree to which the person's freedom of movement was restrained, and (4) the extent to which the person was told that they did not have to answer law enforcement's questions. *United States v. Panak*, 552 F3d 462, 465 (6th Cir, 2009).

"Interrogation" is "any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 US 291, 301 (1980). A determination of whether police questioning is an interrogation turns on the defendant's perception of the police conduct and, as measured by the police perspective, the reasonable

likelihood that the police conduct would illicit an inculpatory response. *Innis*, 446 US at 301, n. 7.

As stated in the arguments above, Petitioner, a young man with some limited cognitive capabilities, was subjected to more than 7 hours of interrogation by government agents. Their post-exam interview exceeded the scope of his *Miranda* waiver. At the time of the interview, Mr. Fluckes lacked any meaningful experience with the criminal justice system and had not been prepared or advised by Ms. Steslicki regarding the consequences or what to expect from a  post-exam interrogation. In his Affidavit, Mr. Fluckes avers he only had about 5 hours of sleep prior to the interrogation and had not eaten for more than 6 hours before arriving at the HSI office. (Exhibit 1, ¶ 11). He was not offered a bathroom break although he was offered water. (Id, ¶13).

In addition, the interview of MV1 calls into question the reliability of Mr. Fluckes' statements admitting inappropriate contact with MV1. The facts were there. A motion to suppress and request for an evidentiary hearing would have provided an opportunity to challenge the reliability and admissibility of Petitioner's statements prior to sentencing.

The record in this case clearly indicates that Attorneys Poota and Siegrist had facts to support arguments that Mr. Fluckes' statements at the post-exam

interrogation were involuntary. They repeatedly stated those facts at various status conferences with this Court. (See R59: TR 4/3/13, Pg ID 311-313; R62: TR 11/22/13, Pg ID 342). They argued those facts during Mr. Fluckes' sentencing proceedings. (See: Defendant's Sentencing Memorandum (under seal); R48: TR 11/14/14, Pg ID 207-209; R41: Supplemental Memorandum, Pg ID 154-155). What they didn't do is present this information to the court in the correct way, i.e., a timely motion to suppress.

These factors, when examined by any reasonable criminal defense attorney, required the filing of a motion to suppress his statement and prohibiting the use of his statement and any evidence derived from it at sentencing. Attorneys Siegrist and Poota's failure to file any motions to suppress Mr. Fluckes' statements fell far below an objective standard of reasonableness. Their failure to advocate Mr. Fluckes' cause was not the result of strategy, but a failure to comprehend the basic requirements of filing pre-trial motions in a criminal case. As a direct result of their failure to file these motions, Mr. Fluckes was prejudiced. His statements were used to enhance the scoring of his sentencing guidelines by 5 levels and considered by this Court in its adoption of that scoring, which was the starting point for the Court's sentencing analysis and used in this Court's consideration of 18 USC § 3553(a) factors, and in Mr. Fluckes' ultimate sentence. As with Ms.

-38-

Steslicki, "better lawyering would have produced a different result." There is a "reasonable probability" that the successor attorneys' failures made a clear and harmful  difference in the outcome and undermined the integrity and fairness of the proceedings against Mr. Fluckes.

<u>**CONCLUSION**</u>

Daniel Fluckes requests that this Court find that his Sixth Amendment right to effective assistance of counsel was violated by the failures of Attorney Sarah Steslicki and Attorneys Howard Siegrist and Julian Poota and vacate his sentence. In the alternative, Mr. Fluckes requests this Court hold an evidentiary hearing.

Respectfully Submitted,

**GUREWITZ & RABEN, PLC**

By:    s/Margaret Sind Raben
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4708
Email: msraben@aol.com
Date:July 26, 2016      Attorney Bar Number: P39243

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

/s Margaret Sind Raben  (P39243)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4708
email: msraben@aol.com