UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DANIEL J. FLUCKES,

      Defendant.

_____/

CASE NO. 13-20116
CIVIL NO. 16-12763

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER**
**(1) GRANTING, AFTER AN EVIDENTIARY HEARING PURSUANT TO 28**
**U.S.C. §2255, DEFENDANT'S MOTION TO SUPPRESS HIS COERCED AND**
**NON-*MIRANDIZED* POST-POLYGRAPH EXAMINATION STATEMENT THAT**
**WAS UTILIZED IN HIS PRESENTENCE REPORT TO SUPPORT A FIVE-**
**LEVEL SENTENCING GUIDELINE RANGE ENHANCEMENT PURSUANT TO**
**U.S.S.G. 2G2.2(b)(5) THAT PREJUDICED HIS SENTENCING;**
**(2) FINDING THAT DEFENDANT WAS DEPRIVED OF HIS SIXTH**
**AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BASED**
**ON DEFENSE COUNSELS' FAILURE TO FILE A PRE-PLEA MOTION TO**
**SUPPRESS HIS POST-POLYGRAPH EXAMINATION STATEMENT**
**PURSUANT TO FED. R. CRIM. P. 12(b)(3)(C);**
**(3) FINDING, UNDER *STRICKLAND v. WASHINGTON*, 466 U.S. 668, (1984), A**
**REASONABLE PROBABILITY THAT BECAUSE OF COUNSEL'S FAILURE**
**TO FILE THAT NOW-GRANTED MOTION TO SUPPRESS, THE RESULT OF**
**THE SENTENCING HEARING WOULD HAVE BEEN DIFFERENT, IN**
**DEFENDANT'S FAVOR.**
**(4) SETTING A RESENTENCING HEARING FOR**
**THURSDAY MARCH 28, 2018 at 2:00pm**

This Court finds that Defendant Daniel J. Fluckes was denied effective assistance

of counsel because of his counsels' failure to file a motion to suppress his post-polygraph

1

statement because it was made after 5½ hours of coercive interrogation, and also, because he did not receive his *Miranda* warnings prior to that extended non-*Mirandized* post-polygraph interrogation. This Court, also finds that defense counsels' failure to file a pre-plea motion to suppress, which has now been granted after a 28 U.S.C. §2255 evidentiary hearing, resulted in a five-level Sentencing Guideline enhancement pursuant to United States Sentencing Guideline §2G2.2(b)(5), that prejudiced Petitioner at his sentencing, establishing ineffective assistance of counsel. Specifically, Defendant was prejudiced at his sentencing because the five level Sentencing Guideline enhancement contained in the presentence report raised his Guideline range significantly, from 151-188 months to 262-327 months. On June 30, 2015 Defendant Daniel Jamar Fluckes was sentenced to the custody of the Bureau of Prisons for 80 months.

In sentencing Defendant Daniel Fluckes the Court recognized that he pled guilty to a very serious crime – downloading and disseminating images of child pornography. The Court recognizes the significant negative impact of this criminal activity on child victims whose images continue to be disseminated time and again. The Court sentenced Defendant Daniel Fluckes to a period of incarceration well above the five year statutory mandatory minimum applicable to the offense of conviction.

The issue now before the Court is whether (1) Defendant was deprived of this Constitutional right to effective assistance of counsel, (2) whether that deprivation prejudiced his sentencing, and (3) if so, the necessary remedy.

**BACKGROUND**

Defendant Daniel Fluckes, a 19 year old intellectually "challenged" individual was arrested at his residence, his parents home, on a complaint charging him with viewing and disseminating child pornography on a computer. Subsequently, at his first attorney's suggestion, that he agreed with, he came with his mother to the U.S. Department of Homeland Security Office in the McNamara Federal Building to undergo a polygraph examination about whether he had previously touched a minor under 18 in a genital area. Upon arrival at 1pm, Defendant Fluckes and his mother Angela Fluckes were met by Homeland Security Case Agent Devallons Desmarets, who escorted Defendant into the polygraph room, and told his mother to go have lunch, and we'll be done when you get back. After interviewing Defendant, Homeland Security Agent Thad Baxter administered the polygraph exam from 2:18pm to 2:45pm, and concluded that Defendant Fluckes was being "deceptive" in his answers to questions regarding touching genitalia of a minor. Baxter confirmed his conclusion with another Homeland Security Agent, Luther Frye. Baxter informed Defendant of his conclusion.

After the polygraph examination had concluded, both Polygrapher Agent Baxter and HHS Special Agent Devallons Desmarets continued the detention of Defendant Fluckes in that small 8'x8' windowless room and interrogated him for 5½ more hours, until 8:15pm. Defendant was not provided post-polygraph *Miranda* warnings prior to this post-examination questioning. Polygraph Agent Baxter interrogated Defendant for the

first 4½ hours with Case Agent Desmarets watching through a one-way mirror in a separate room. Defendant Fluckes did not admit to touching a minor during that 4½ hours of questioning by Baxter. At that point Case Agent Desmarets reentered the room; Baxter remained in the room. Desmarets then conducted the fifth hour of interrogation, and finally secured the inculpatory statement at issue at 8:15pm.

Defendant stated that he had previously touched the genitals of a friend's minor brother. August 2, 2017, Evidentiary Hearing Tr. Page ID 738. Hereinafter Evid. Hrg. Tr. Significantly, the minor "victim" of the touching, was subjected to an extended "Kids-Talk" video interview by a government-hired child psychologist, at which he continuously denied any such touching by the Defendant. The Defendant's statement was provided by the Government to the Probation Officer, and utilized in the Presentence Report to support the application of a five-level sentencing guideline enhancement pursuant to §2G2.2(b)(5) that resulted in a significantly higher sentencing guideline range.

During that 5½ hour period, Defendant Fluckes was not provided food, a break, or an opportunity to speak with his mother, who having returned to the lobby after lunch and waiting in the lobby for hours, had knocked on the door around 5pm and tried to speak with her son, but was prevented from doing so by Agent Desmarets.

The case is now before the Court pursuant to Defendant's petition pursuant to 28 U.S.C. §2255 asserting a violation of his Sixth Amendment right to effective assistance of

Counsel. Defendant is not challenging his Rule 11 Plea agreement, which the Court accepted. The Rule 11 contained a provision, 2B, whereby Defendant was permitted to seek a Guideline Sentencing range of 151-188 months, in opposition to the Government's recommendation of 262-327 months which was adopted in the Presentence Report. The Rule 11 contained an appeal waiver by Defendant on all grounds except a claim of ineffective assistance of counsel. Defendant was informed by the Court of this right at the continuation of his sentencing hearing. Transcript of Continuation of Sentencing Hearing, January 16, 2015, pp. 11-12.

The Court concludes, after holding an evidentiary hearing on August 2, 2017 pursuant to 28 U.S.C. §2255, that there was a violation of Defendant's right under the Sixth Amendment to effective assistance of counsel, because his counsel failed to file a pre-plea motion to suppress his coerced and non-*Mirandized* statement after the polygraph examination. The Court finds that this statement was coerced in violation of Defendant's Fifth Amendment right to due process, and also secured without the agents' informing Defendant, post-examination of his *Miranda* rights prior to that post-polygraph examination questioning.

While this Opinion and Order is based on the specific finding of a violation of Defendant Fluckes Sixth Amendment right to effective assistance of counsel for his defense, it is necessary to discuss the issue of the coerced and non-*Mirandized* statement that created the basis for the Sixth Amendment violation.

Defendant who had consented to undergo a polygraph examination that began at 1:15pm and concluded at 2:00pm, was thereafter detained in the exam room for interrogation that lasted for well over 5½ hours, until 8:15pm.

Prior to the polygraph examination, Defendant was provided his *Miranda* rights and signed government-produced *Miranda* waiver forms that were titled specific to the polygraph exam. Government Exhibit 1 (Attachment 1) was titled "Homeland Security Investigation Polygraph Examination: Waiving of Rights and Consent to Speak," and was signed by Defendant at 1:15pm. Government Exhibit 2, titled "Homeland Security Investigations Polygraph Examination: Statement of Consent," (Attachment 2), was signed by Defendant at 1:19pm. That form states in pertinent part, in the opening paragraph, that Defendant consents "to be interviewed and submit to a Polygraph Examination . . . ." Thereafter, the eighth paragraph of that form contains the following:

> I, Daniel Fluckes, hereby give my permission and consent, to be interviewed and to undergo a Polygraph Examination.

Thus, both exhibits were titled "Polygraph Examination." Significantly, the Attachment 2 consent form was specific in both the opening paragraph and the eighth paragraph, that Defendant was giving consent "to be interviewed and to undergo a Polygraph Examination." Both consent paragraphs were specific in referring to first, an interview, and then, second, to a polygraph examination. Finally, Government Exhibit 3 (attached), the Polygraph Examination Interview Worksheet, was completed at 1:25pm, before the polygraph examination began. This further confirms the Court's conclusion that Exhibit

2's consent to be interviewed and then to submit to a Polygraph Examination, referred to, and was limited to this pre-examination interview and then to the subsequent exam motion. Indeed that is what occurred: a pre-exam interview, and then a polygraph examination. Nothing was stated in either paragraph, or anywhere in Attachments 1 and 2 about any waiver of rights to post-exam questioning. No additional *Miranda* waiver form was provided to him prior to his post-polygraph examination questioning. There was no testimony at the evidentiary hearing that Defendant was orally provided *Miranda* warnings post exam.

The Court also finds significant to its finding of a coerced and non-*Mirandized* confession statement, that it was secured by Case Agent Desmarets, not polygraph Agent Baxter. Desmarets, who after witnessing Defendant's signature on the pre-exam consent forms 1 and 2, had left the room during the entire Baxter 4½ hour post-polygraph questioning. Only after Baxter had concluded his questioning, did Case Agent Desmarets return to the room and initiate his questioning. Baxter remained in the room, but did not further question Defendant Fluckes. Evid. Hrg. Tr. Desmarets Pg ID 684. That Baxter remained in the room questioning, also created a coercive "Double Team" of agents for that final hour of Desmarets' questioning. Agent Desmarets testified that he was wearing his government issued sidearm. Evid. Hrg. Tr. Pg ID 684.

Thus, even if one were to argue that a polygraph examination is never over until the polygrapher concludes his post-exam questioning, no matter how long, Polygraph

7

Examiner Baxter had concluded his questioning. That fifth hour questioning of Defendant Fluckes by Case Agent Desmarets was "pure" case agent interrogation. Thus, after the 4½ hour of post-exam questioning by Polygraph Examiner Baxter had concluded, Defendant was not released, informed of an opportunity for a break, nor permitted to speak with his mother whose request to speak with Defendant had been rejected by Agent Desmarets.

The due process clause of the Fifth Amendment forbids the admission in evidence of an involuntary confession in a criminal proceeding. In determining the voluntariness of a confession, the Court must assess the totality of the surrounding circumstances – both the characteristics of the accused and the details of the interrogation – to determine whether the defendant's will was overborne. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Interrogation tactics short of physical force can amount to coercion, e.g. tactics that exhaust a suspect physically and mentally, to wit, long interrogation sessions with no breaks.

A recent *en banc* decision of the United States Court of Appeals for the Seventh Circuit, arising under 28 U.S.C. §2254, although not overruling the underlying state court decision admitting a confession under the standard applicable under the AEDPA (not the standard in a §2255 Petition), discussed coercive interrogation tactics:

> Interrogation tactics short of physical force can amount to coercion. The Court has condemned tactics designed to exhaust suspects physically and mentally.
> . . .

8

> In assessing voluntariness, courts must weigh the tactics and
> setting of the interrogation alongside any particular
> vulnerabilities of the suspect. Relevant factors include the
> suspect's age, intelligence, and education, as well as his
> familiarity with the criminal justice system. The interactions
> between the suspect's vulnerabilities and the police tactics
> may signal coercion even in the absence of physical coercion
> or threat.

*Dassey v. Dittmann*, 877 F.3d 297, 304 (7th Cir. 2017)(en banc).

The Supreme Court reaffirmed in *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402 (2011), that whether a suspect is "in custody" is an objective inquiry that focuses on 1, the circumstances surrounding the interrogation, and 2, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation. Then, the Court must apply an objective test to decide whether after examining all of the circumstances surrounding the interrogation, a reasonable person in the suspects' position would perceive there was a restraint on freedom to leave. In the instant case the circumstances support this Court's conclusion that Defendant Fluckes was subjected to restrictive coercive custodial interrogation in that room for 5½ hours. This Court further concludes that, considering the totality of the circumstances, the officers did engage in coercive activity, that the Defendant's state of mind was such as to have been susceptible to coercion, and that Defendant has proven causation between the coercive activity and the confession – police coercion over the 5½ hours of post-exam questioning, and in particular to the final hour of Agent Desmarets', was the crucial motivating factor in the Defendant's decision to confess.

9

In the instant case multiple factors support the Court's conclusion that Defendant Fluckes confession was not voluntary: his 5½ hours of post-examination custodial questioning, his testimony at the August 2, 2017 evidentiary hearing of his fear of not being permitted to leave until he made a confession, his youth, his lack of any prior contact with law enforcement personnel, his limited intellectual capacity, the lack of post-examination *Miranda* warnings, his lack of sleep, his lack of food, and the fact that the statement came only after the polygrapher examiner Baxter had concluded his 4½ hours of questioning, and Agent Desmarets entered the room to impose his Case Agent interrogation. The Court finds that Defendant correctly surmised that he wasn't going to be able to leave the room unless he confessed to something.

Government Exhibit 3 (Attachment 3) was an HHS pre-Polygraph Examination Interview worksheet that contained the following relevant information provided by Defendant:

> 1. That Defendant had slept the previous night for only five hours.
>
> 2. That Defendant had last eaten or drank something at 8:30pm the previous night, to wit, a cheeseburger.

While his first lawyer, Sarah Steslicki, had sent him to a polygraph exam and waived her presence for the polygraph examination, she was never informed, nor was Defendant or his mother, of the possibility of post-examination questioning, much less 5½ hours of coercive interrogation after the polygraph examination had concluded.

Case Agent Desmarets testified at one point at the August 2, 2017 evidentiary hearing that he believed that Defendant was free to leave the interview room after the testing ended, although he had firmly stated in court time and again that the agents were not done with him, did not tell Fluckes he was free to leave, continued the questioning until 8:15pm without any break, without even offering him a bathroom break. Evid. Hrg. Tr. Demarets Pg ID 679-681.

The Court does not credit the testimony by Agent Desmarets at the evidentiary hearing, that Defendant was free to leave after the polygraph exam had concluded. Evid. Hrg. Tr. Pg ID 681.

Significantly, Demarets had previously stated in 2015 that Defendant was not free to leave in response to the Court's questioning at the continuation of the sentencing proceeding on January 16, 2015:

> THE COURT: Okay. So it went from interview to the test and then you repeated – you continued to interrogate him there after the test?
>
> AGENT DESMARETS: Interview him, yes.
>
> THE COURT: Okay. Then after he was not told he could leave after he finished the polygraph test?
>
> AGENT DESMARETS: No, sir. We weren't done.

Continuation of Sentencing Hearing Transcript (1/16/15, Pp, 9-10, P. I.D. 177-178). Further, in response to the Court's question at the continuation of the Sentencing Hearing, Desmarets answered as follows:

11

COURT: [A]fter the interview and the polygraph test, was
Mr. Fluckes allowed out to meet with his mother?

AGENT DESMARETS: It wasn't that he wasn't allowed out.
We never stopped the process of what they (sic) were doing.

Sentencing Hearing Continuation, January 16, 2015, P. 9, P. I.D. 177. And that process

lasted, and lasted . . . !

The Court finds that the evidence clearly establishes that Fluckes was not free to

leave. The Court does not find credible Agent Desmarets evidentiary hearing testimony

that Desmarets would have allowed Fluckes to exit that room until Desmarets was "done"

with him. Evid. Hrg. Tr. Pa ID 681. It not only contradicts Desmarets' other testimony, it

also defies the factual reality of what occurred. There is absolutely no evidence that

Fluckes, or anyone in that situation would have realized that he was free to leave.

It bears repeating that Defendant Fluckes was never provided a break from 1:15pm

until 8:15pm, never told he could leave the room, never provided an opportunity to talk to

his mother, and, of course, never provided post-exam *Miranda* warnings before the

marathon questioning began. Indeed, the Court finds that the fact that Defendant never

asked for a break during the 7 hours in the room evidences how overwhelmed,

intimidated, and downright scared he was by this never-ending ordeal.

Defendant's Mother Angela Fluckes testified at the evidentiary hearing that Daniel

had been diagnosed with developmental delays in preschool, had difficulties

understanding spoken language, using language, and expressing himself in words. She

further pointed out that he was a Special Education student, requiring an IEP every year until he graduated high school, and that "To graduate, Defendant required a reader, a calculator, and special seats for his test taking." (Defendant's Supp. Memo P.12, citing to Evid. Hrg. Tr. Pg IDs 709, 716-17, 720-21). The Government does not contest these facts. Mrs. Fluckes also testified that she had knocked on the door before 5pm and that Agent Desmarets told her that her son would be out shortly. Evid. Hrg. Tr. Pg ID 702.

Defendant testified that he had never previously been arrested or even been questioned by police prior to this case. Evid, Hrg. Tr. Pg ID 729. This was confirmed by Agent Desmarets. Evid. Hrg. Tr. Pg ID 676. Defendant also testified that he was never told there would be more questioning after the polygraph exam if the examiner determined that an exam response was deceitful. Evid. Hrg. Tr. Pg ID 765.

Defendant testified that when he stopped answering Baxter's questions because he was frightened, Baxter got frustrated with him, moved his chair closer to Defendant and got "In his face" by asking the same questions repeatedly – with Baxter's face "getting red," and with some of Baxter's saliva hitting Defendant. Evid. Hrg. Tr. Pg ID 735-736. The Court credits Defendant's testimony on these facts. Baxter had been questioning Defendant for 4 hours, without receiving the response he wanted. The Government did not call Agent Baxter to testify at the hearing.

Defendant testified that he thought he would be at the exam for probably an hour or two. Indeed Agent Desmarets had told his mother to go have lunch, and when you

13

return we'll be done: that would encompass an hour or so. Instead, Defendant was kept in the room for 7 hours. Evid. Hrg. Tr. Pg ID 727. At that point, Defendant was frightened, for good reason. Evid. Hrg. Tr. Pg ID 736.

Defendant testified that he thought he was going to be kept in the polygraph room all night; he wanted to get out of the windowless room; he couldn't tell what time it was; he believed he was locked in the room. Evid. Hrg. Tr. Pg ID 736-37. He felt pressured to say something to get out of the room Evid. Hrg. Tr. Pg ID 740-41. The Court finds these were reasonable assumptions on Defendant's part, given that he had been kept isolated in that room for 7 hours from 1:15pm - 8:15pm. Defendant also testified that the agents did not offer him an opportunity to go to the bathroom. Evid. Hrg. Tr. Pg 172-173. The Court credits this testimony.

**Sixth Amendment: Ineffective Assistance of Counsel**

Mrs. Fluckes testified at the evidentiary hearing, that subsequent to the polygraph exam, Defendant told her that Attorneys Siegrist and Poota's plan was to challenge his post polygraph statements at sentencing, but that this strategy was "not going to work," and that he needed "a motion." She testified that she pressed defense counsel to file a motion to suppress the post-exam statements, but they refused. Evid. Hrg. Tr. Pg ID 707. Mrs. Fluckes also recalled that the Court had suggested on the record to Defense Counsel, that their possible avenue for relief from his allegedly coerced statement was to file a motion to suppress. Evid. Hrg. Tr. Pg ID 707-708.

14

The Court finds that Defendant was prejudiced by ineffective assistance of counsel by Siegrist and Poota in failing to file a pretrial motion to suppress his post-polygraph exam statement made after 5½ hours of interrogation. Mr. Poota, who was called as a witness by the Government to testify at the §2255 hearing that he and Siegrist had represented Defendant from his indictment through the post-sentencing motions. Evid. Hrg. Tr. Pg. ID 618. Poota testified that they met with Defendant at least 12 times, reviewed the discovery, discussed the evidence with him and determined that Defendant's best option was to obtain a plea agreement and that Defendant agreed with that strategy. Evid. Hrg. Tr. Pg ID 622, 631-32, 760-61.

Poota was aware of the circumstances under which Defendant's statements were made. He was also aware that Section 2B of the Rule 11 plea agreement contained the Government's recommendation to add the 5 level sentencing enhancement under Guideline §2G2.2(b)(5) based upon Fluckes' post-exam statements. Evid. Hrg. Tr. Pg ID 624. The Government recommended a guideline range of 262-327 months; Defense counsel did, in that Section of the Rule 11, disagree with the Government's recommendation, and recommended instead, a 151-188 month guideline range. Yet, Poota/Siegrist being aware, pre-plea, of the significant impact of that statement/ enhancement did not file a pre-plea motion to suppress the post-polygraph statement, as required under Federal Rule of Criminal Procedure 12(b)(3)(C):

> (3) Motions That Must Be Made Before Trial
> . . . .

(C) Suppression of Evidence.

Poota testified that he and Siegrist attended a Court status conference on April 3, 2013, at which Siegrist began describing the coercive nature of the polygraph process (R59; Tr 4/3/13 Status Conference Pg. ID 311, 312), and this Court responded: "Okay, if you want to motion up anything, I am here and we'll deal with it, so that's how we do it." No such pre-plea motion was filed.

Poota testified that he and Siegrist had identified facts that supported an argument that Defendant's statements were coerced, and that the polygraph setting was a custodial interrogation. (Evid. Hrg. Tr. Pg. ID 636-37). Poota testified that he and Siegrist believed that they could have filed a Rule 12 Motion to Suppress, but concluded against filing it because Defendant's statements were only relevant to the sentencing. This conclusion confirms ineffective counsel. Had the pre-plea Rule 12 Motion to Suppress been successful, as was the subsequent §2255 Motion to Suppress, Fluckes coerced and non-*Mirandized* statement would have been suppressed, and not utilized in the Presentence Report to provide the factual basis for the five level guideline enhancement. The Court finds that given the totality of the circumstances, Defendant's coerced statement does not bear indicia of reliability that would support including it in the Presentence Report.

Poota's §2255 evidentiary hearing testimony presented a plethora of "strategy" excuses for failing to file a Rule 12 Motion to Suppress, none of which supports any claim of a valid legal "strategy" to validate counsels' failure to file that Motion:

1. It would have been premature
2. The Court maybe would have struck the motion as "irrelevant"
3. The Government could have withdrawn its (not yet offered) Rule 11 agreement and insisted Defendant would have to go to trial. As to this claim, Poota admitted that the Government had never told him that filing motions would eliminate the possibility of a plea agreement, and he did not ask the Government about this.

Evid. Hrg. Tr. Pg ID 646-67, 651-52, 654.

The Court also finds ineffective assistance of counsel by Siegrist and Poota in failing to file a Motion to Suppress Defendant Fluckes' post-exam statement because he was not provided *Miranda* warnings as to that questioning.

The Court notes that on January 27, 2015, Defense Counsel Siegrist and Poota filed a Motion for Reconsideration of the Court's Ruling Regarding Sentencing (Dkt. #47) seeking a ruling on a disputed portion of the Presentence Report, to wit, the five level enhancement under U.S.S.G. §2G2.2(b)(5), and resentencing. The Court responded in an Order Denying Defendant's Motion for Reconsideration of Sentencing (Dkt. #56), stating that it had based it's 80 month sentence of Petitioner on the facts before it at that time. Because Counsel for Defendant had not filed a Motion to Suppress under Fed. R. Crim. P. 12(b)(3)(C), Defendant's post-exam statement was included in the facts, to wit, the Presentence Report, and produced the five level enhancement. Although Defense Counsel disputed the inclusion of the five level enhancement, the Court concluded that this statement, disputed by Defendant, had not been challenged in a pre-plea Motion to

Suppress, and at that time was therefore included in the PSR provided to the Court, and thus proceeded to sentence considering that fact. Fast-forward to the present: Defendant has filed a Motion under §2255 challenging that statement. The Court has held an evidentiary hearing and now having the benefit of the extensive testimony and exhibits, and legal briefing, concludes that the statement must be suppressed and not utilized in the sentencing.

The Court concludes that counsel for Defendant (Siegrist and Poota) did not provide effective assistance of counsel, and that Defendant suffered prejudice by their conduct insofar as it resulted in a significantly higher Guideline range, which the District Judge must calculate correctly, and thereafter use as a lodestar in imposing a sentence.

In response to Defendant's 28 U.S.C. §2255 Motion contending *inter alia* that Siegrist and Poota were ineffective counsel for failing to file a Rule 12 Motion to Suppress his post polygraph statements as coerced, involuntary and inadmissible under the Fifth and Sixth Amendments, the Government contends that Siegrist and Poota were not ineffective because Petitioner could not establish

> (1) meritorious grounds for a motion to suppress
> (2) the failure to file was objectively unreasonable, and
> (3) that without the excludable evidence, there is a reasonable probability the outcome of the proceeding would have been different.

Dkt. 83 Gov't Post Hrg. Memorandum, 9/29/17, Page ID 791.

The Court disagrees and finds:

18

(1) That the evidence of the 5½ hour interrogation, and the harsh, coercive, unrelenting manner of the interrogation after the conclusion of the polygraph test, supports the Court's finding of extreme and unlawful coercion.

(2) That the record clearly support the conclusion that Siegrist and Poota were ineffective in failing to file a motion to suppress the statement. Indeed, even after defense counsels' assertion to the Court that Defendant Fluckes' statement was coerced, and having been made aware by the Court on how to litigate a claim of a coerced statement, they never filed the required Motion to Suppress under Federal Rule of Criminal Procedure 12(b)(3)(c).

(3) That by suppressing the unlawfully coerced statement, the Court has ruled that statement should not have been utilized in the Presentence Report to apply the five-level enhancement that significantly raised the guidelines range.

(4) That Defendant was not provided *Miranda* warnings with regard to post-polygraph questioning, and therefore the fifth hour statement should be suppressed. Attachment 2, the Home Security Investigation Polygraph Examination Statement of Consent states clearly states that the consent applies, in this order: to the interview, and to the polygraph examination. Period.

(5) That Defendant has established a reasonable probability that but for defense counsel's failure to file a pre-plea motion to suppress, the result of the sentencing hearing would have been different. *Strickland*, 466 U.S. at 694.

The Court finds that the remedy for the violations of Defendant's Sixth Amendment right to effective assistance of counsel is to schedule a resentencing, where the unlawfully coerced and non-*Mirandized* statement is not factored into the Guideline range.

## Further Legal Discussion with Regard to the *Miranda* Issue

*Wyrick v. Fields*, 103 S.Ct. 394 (1982), a Per Curium Supreme Court opinion held that, given the totality of the circumstances in that specific case, Defendant had waived his Constitutional right receive *Miranda* warnings prior to post-polygraph exam questioning when he had signed a *Miranda* waiver prior to undergoing a polygraph examination that he had requested. The Supreme Court stated:

> At the conclusion of the polygraph examination which took less than two hours, the CID agent told Fields that there had been some deceit, and asked if he could explain why his answers were bothering him. Fields then admitted having intercourse with the victim . . . but said she had instigated and consented to it. The agent asked Fields if he wished to discuss the matter further with another CID agent and with the Waynesville, MO Chief of Police. Fields said that he did. Then, in his turn, the police chief read Fields his *Miranda* warnings over again before questioning him. Fields repeated that he had had sexual contact with the victim, but that it had been consensual.

*Wyrick* at 44-45.

Fields had sought to suppress the testimony of the two CID agents and the police chief about his post-examination admissions to voluntary intercourse with the victim.

The Supreme Court held:

20

> [T]he Court of Appeals did not examine the "totality of the circumstances." . . .
>
> . . . .
>
> By requesting a polygraph examination, he initiated interrogation. That is, Fields waived not only his right to be free of contact with the authorities in the absence of any attorney, but also his right to be free of contact with the authorities in the absence of any attorney, but also his right to be free of interrogation about the crime of which he was suspected. Fields validly waived his right to have counsel present at "post test" questioning <u>unless the circumstances changed so seriously</u> that his answers no longer were voluntary, or unless he no longer was making a "knowingly and intelligent relinquishment or abandonment" of his rights.

*Wyrick* at 47 (citation omitted) (emphasis added). The Supreme Court concluded that in that case it was not reasonable to require new warnings because the polygraph examination had not been discontinued, and the defendant was asked if he could explain the test's unfavorable results. *Id*. At 47. The Court added that it would have been unreasonable for the Defendant and his attorneys to assume that he would not be informed of the polygraph readings and asked to explain any unfavorable result. Merely disconnecting the polygraph equipment could not remove his knowledge that he could stop the questioning at any time and could request at any time that his lawyer join him. *Id*. 48-49. This Court notes that the circumstances of the post-examination questioning in *Wyrick* were not the circumstances present here, to wit, the extensive 5½ hour post-exam interrogation and the questioning by the Case Agent for the last hour. Nor was there any discussion, in *Wyrick*, of the specific language contained in that consent waiver form.

The *Wyrick* majority concluded that it was resting its holding on the Fifth

21

Amendment issue – the right to have counsel present during a custodial interrogation, not on any Sixth Amendment issues: "We express no view as to whether any constitutional safeguards not mentioned by the Court of Appeals bear on this case." *Id.* at 49. Thus, *Wyrick* rejected the Eighth Circuit's creation of a per se rule that the use of polygraph results in questioning is inherently coercive. Instead, the Supreme Court applied a "totality of the circumstances" test, that would inquire, *inter alia*, whether the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a knowing and intelligent waiver of his rights." As the United States Court of Appeals for the Sixth Circuit noted in *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010): "Under *Wyrick v. Fields*, additional warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." In the instant case, the Court finds that the circumstances seriously changed between the initial *Miranda* warnings at 1:30pm, before the polygraph examination, and the coerced statement over six hours later, after Case Agent Desmarets' interrogation.

This Court concludes that the facts in *Wyrick* – some post polygraph examination questioning – are not comparable to the instant circumstances – 6 hours of post-examination questioning.

A decision of the United States Court of Appeals for the First Circuit, *United States v. Leon-Delfis*, 203 F.3d 103 (1st Cir., 2000), provides support for this Court's conclusion with regard to the instant extended post-polygraph examination questioning,

and the failure to repeat *Miranda* warnings after the polygraph examination. Leon-Delfis moved to suppress a confession he gave to FBI agents following a polygraph test "because he did not waive his Sixth Amendment right to counsel for purposes of the post-polygraph exam questioning." *Id.* 110.

The First Circuit pointed out that the Government has the burden to prove an intentional abandonment of the Sixth Amendment right to counsel. *Id.* 110. Upon arrival for the polygraph exam Leon-Delfis signed two waiver forms: a general *Miranda* waiver, and a specific waiver for polygraph questioning. Leon-Delfis testified that he understood the first form applied to questions the agent would ask him before the polygraph test, and the second waiver form applied to "yes or no" questions asked during the test. "He testified that he never consented to post-test questioning", and that the agent told him the test would take 2-2½ hours. He testified that the polygrapher's eight questions lasted only 20-25 minutes, but that right after the test, while still connected to the polygraph machine, the agent polygrapher told him he had flunked the test, so "how-about telling us the truth," and then a second agent came in and the questioning ran for over an hour, including agents threatening to destroy the defendant in court, and telling him to "man-up." *Id.* 108. Leon-Delfis' post-polygraph examination interview lasted only one hour before he confessed. *Id.* The polygraph examiner agent testified that, as in Fluckes' case, he had not explained anything about post-test questioning in the waivers. *Leon-Delfis* at 108. And like the instant case, there is no evidence that that Defendant Leon-Delfis had

initiated the post-polygraph discussion. *Id*. 111.

The First Circuit held that substantial testimony from the suppression hearing supported a finding that the agent did not inform Leon-Delfis about post-test questioning. The First Circuit then discussed the defendant's Sixth Amendment right to have the assistance of counsel for his defense, and cited to *Maine v. Moulton*, 474 U.S. 159, 168 (1985), for the proposition that "the assistance of counsel cannot be limited to participation in a trial," and that it "applied to post-polygraph questioning." *Id*. at 170.

The First Circuit focused on "whether Leon-Delfis validly waived that right for questioning that occurred after the polygraph test." *Leon-Delfis* at 110. The Court then stated that

> the government has the burden to prove an intentional relinquishment or abandonment of the Sixth Amendment right to counsel . . . and that we should indulge in every reasonable presumption against waiver of fundamental constitutional rights . . . . The determination of whether there has been an intelligent waiver of the right to counsel must depend in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. *Id*. 110 (quoting various Supreme Court decisions).

*Id*. The First Circuit noted that "Had Leon-Delfis initiated the post-polygraph discussion, we might reach a different outcome. But he did not . . . . Leon-Delfis did not waive his right to counsel. Leon-Delfis was neither told that post-test questioning would occur, nor signed a waiver that specifically mentioned the possibility of post-test questioning." *Id*. at 111. The First Circuit reasoned:

24

It does not follow that Leon-Delfis waived his right to counsel for post-test questioning because he waived his right to pre-test and test questioning: waivers of rights are specific. The waivers *Leon-Delfis* signed did not specifically mention the possibility of post-polygraph questioning, and Agent Lopez failed to explain that post-polygraph questioning would occur.

*Id.* 112 (citations omitted). This Court agrees with this reasoning, in particular given the limiting interview/examination waiver language, the extended, coercive 5½ hour post-polygraph examination questioning, and the failure to provide post-examination *Miranda* warnings to Defendant Fluckes.

**Discussion of Additional Relevant Supreme Court Precedent**

**1.    Re: Ineffective Assistance of Counsel**

In *Lee v. United States*, 137 S.Ct. 1958 (2017). Defendant, a lawful permanent resident alien, was charged with distribution of the drug "ecstasy." Defendant's attorney assured him that if he pleaded guilty, the Government would not deport him. That assurance was erroneous. All parties agreed that Defendant Lee had experienced ineffective assistance of counsel: objectively unreasonable representation. The question before the Supreme Court was whether he could show how he was prejudiced. The Supreme Court pointed out that "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding' including when he enters a guilty plea." *Id.* 1964. In *Lee*, by pleading guilty, counsel's deficient performance led to the forfeiture of a trial.

In the instant case, defense counsels' deficient performance in failing to file a

motion to suppress Defendant Fluckes' "statement" led to a judicial proceeding of disputed reliability, to wit, a sentencing where the guideline range was significantly enhanced by application of the statement by the Probation Officer in calculating the guideline range. In the instant case, as in *Lee*, Defendant Fluckes was prejudiced.

## 2.   <u>Re: Sentencing</u>

The Supreme Court, has time and again emphasized the significant impact that the applicable Sentencing Guideline range should have on a District Court's determination of a defendant's sentence. The Court finds that the instant enhancement significantly impacted this Court's sentencing decision.

In *United States v. Molina-Martinez*, 136 S.Ct. 1338 (2016), the Supreme Court reaffirmed its decision in *Peugh v. United States*, 133 S.Ct. 2072, 2082-83 (2013), that at the outset of the sentencing proceedings, the district court must determine, and thereafter remain cognizant of the applicable Sentencing Guideline range. *Molina-Martinez* at 1342. The Court stated:

> The Court has made clear that the Guidelines are to be the sentencing court's 'starting point and . . . initial benchmark.' *Gall v. United States*, 128 S.Ct. 586 (2007). Federal courts understand that they '<u>must</u> begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.' *Peugh* 133 S.Ct. At 2083. The Guidelines are 'the framework for sentencing,' and 'anchor . . . the district court's discretion.' 133 S.Ct. 2087. 'Even if the sentencing judge sees a reason to vary from the Guidelines,' 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence.' *Id*. 133 S.Ct.

2083.

*Molina-Martinez v. United States*, 136 S.Ct. 1338, 1345 (2016) (emphasis in original).

The Supreme Court further held:

> The Guidelines central role in sentencing means that an error
> related to the Guidelines can be particularly serious. A district
> Court that 'improperly calculates' a defendant's Guidelines
> range, for example, has committed a 'significant procedural
> error.' *Gall*, 128 S.Ct. 586.
>
> . . .
>
> [T]he Guidelines are not only the starting point for most
> federal sentencing proceedings but also the lodestar. The
> Guidelines inform and instruct the district court's
> determination of an appropriate sentence. In the usual case,
> then, the systemic function of the selected Guidelines range
> will affect the sentence.
>
> . . .
>
> In most cases a defendant who has shown that the district
> court mistakenly deemed applicable an incorrect, higher
> Guidelines range has demonstrated a reasonable probability of
> a different outcome.

*Molina-Martinez* at 1345-46.

## **CONCLUSION**

This Court concludes that Fluckes has established that he was denied effective

assistance of counsel because of defense counsels' (1) failure to file a motion to suppress

his coerced post-polygraph statement made after 5½ hours of interrogation, and (2) failure

to file a motion to suppress his post-exam statement because he was not provided post-

exam *Miranda* warnings. The Court finds that he would have prevailed on a motion to

suppress that statement, the statement would not have been utilized in the PSR's

Guideline calculation thereby resulting in a significantly lower Sentencing Guideline range, and that would have resulted in a lower sentence, given the Supreme Court's admonition to sentencing courts that the Sentencing Guidelines are the lodestar in crafting a sentence. In Fluckes' sentencing the guideline lodestar was 262-327 months incarceration, while in the scheduled resentencing the lodestar will be a significantly lower 151-188 months incarceration.

This Court's conclusion to suppress the statement rests on two independent grounds:

(a) Defendant's statement, made after 5½ hours of post-examination questioning, was coerced and not voluntary,

(b) The Defendant was not provided *Miranda* warnings prior to the 5½ hour post-polygraph exam interrogation that, in the last hour, resulted in the statement.

Accordingly, the Court

(1) grants Defendant's Motion to Suppress his coerced and non-*Mirandized* statement that was included in his presentence report to support a five level U.S. Sentencing Guidelines enhancement pursuant to U.S.S.G. 2G2.2(b)(5) that the Court finds prejudiced his sentencing.

(2) concludes that Defendant was deprived of his Sixth Amendment right to effective assistance of counsel based on defense counsels' failure to file a pre-plea Motion to Suppress his post-polygraph examination statement pursuant to Fed. R. Crim. P. 12(b)(3)(C).

(3) finds under *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984), a reasonable probability that, because of counsel's failure to file that now-granted motion to suppress, the result of the sentencing hearing would have been different, in Defendant's favor.

(4) Orders a resentencing hearing on Wednesday, March 28, 2018 at 2:00pm.

SO ORDERED.

DATED:    **MAR 0 9 2018**

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

13-013)-TOB



Homeland
Security
Investigations

# HOMELAND SECURITY INVESTIGATIONS
## POLYGRAPH EXAMINATION

### WARNING OF RIGHTS AND CONSENT TO SPEAK

Before I ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in a Court, or other proceedings.

You have the right to talk to a lawyer for advice before I question you and to have him with you during questioning.

If you can not afford a lawyer and want one, a lawyer will be appointed for you by the Court.

If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

I voluntarily waive my rights and I am willing to answer questions at this time.

_____          _____
Witness Signature                   Examinee Signature

_____          _____
Witness Signature                   Date: 1/29/13

_____          _____
File Number: 13-013-TOB             Time: 1:15 pm

GOVERNMENT EXHIBIT

00000121

B-013-TAB



Homeland Security Investigations

# HOMELAND SECURITY INVESTIGATIONS
## POLYGRAPH EXAMINATION

### STATEMENT OF CONSENT

I, _Daniel Fluckes_, of my own free will, voluntarily and with out duress, threats or promises hereby consent to be interviewed and submit to a Polygraph Examination in connection with an investigation concerning _Child Pornography Exploitation_

I understand that the questions to be asked on the test will be reviewed with me prior to the examination.

I understand that polygraph components will be attached to my body for the purpose of collecting physiological data during the Polygraph Examination. I also understand that any attempt to influence or manipulate the outcome of this polygraph examination will be viewed as an act of deception.

I represent that I am in good mental and physical condition and know of no mental or physical problem, which would impair my ability to be examined by polygraph.

I understand that the Polygraph Examination may be stressful and that I may consult a physician, at my own expense, to determine if it is suitable for me to be examined by polygraph.

I also understand that I do not have to submit to an interview or Polygraph Examination and that even after consenting to do so, I can withdraw my consent and stop the interview and Polygraph Examination at any time.

I further consent to any and all electronic recording or monitoring of the interview and Polygraph Examination. I understand that any information obtained during the interview and Polygraph Examination may be used in any further proceedings instituted in connection with this investigation. I also understand that if any material false statements are obtained during the interview and Polygraph Examination, I may be subject to prosecution under18 U.S.C. 1001.

I, _Daniel Fluckes_, hereby give my permission and consent, to be interviewed and to undergo a Polygraph Examination. I do hereby release and forever hold harmless, the United States, the Polygraph Examiner, and other Government employees of any and all responsibility and liability in connection with this Polygraph Examination.

I submit that I am _19_ years of age and was born on _05 / 13 / 93_.

_Daniel Fluckes_
Examinee Signature

---
Witness Signature

_Devallong Desmont_
Witness Signature

_1/29/13_
Date

_B-013-TAB_
File Number

_1:19 pm_
Time

GOVERNMENT
EXHIBIT
Q

PENGAD-Bayonne, N.J.

00000122



**Homeland Security Investigations**

## POLYGRAPH EXAMINATION INTERVIEW WORKSHEET

Examinee Name _Daniel Fluckes_     SSN/RFC _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_     PF-Folder Number _13-0131-TBB_

DOB _5/13/93_   Age _19_   POB _Camden MR_     Height _60_   Weight _195_   Eyes _Brown_   Hair _Black_

Current Address _Garden City_     Former Address

<u>MEDICAL HISTORY</u>

Are you presently under a Physician's care? Y /(N)     Have you taken any medication prescribed by a Doctor within the last 6 months? Y /(N) Medication: _____

Are you presently pregnant? Y /(N)/ N/A     Reason: _____

Have you ever experienced any?
- Heart Problems? Y /(N) If yes: _____
- High Blood Pressure? Y /(N) If yes: _____

FIT __X__ / UN-FIT ____
- Breathing Problems? Y /(N) If yes: _____
- Recent Arm Injury? Y /(N) If yes: _____
- Recent Surgery? Y /(N) If yes: _____

In the last 24 hours have you taken any medication, drugs, alcohol, or marijuana? Y /(N) If yes: _____
Are you experiencing any physical discomfort or pain? Y /(N) If yes: _____
How many hours sleep have you received last night? _5_ (hrs) What time did you wake up? _8am ~ 11:30am_
When is the last time you ate / drank something? _8:30pm_ What did you eat / drink? _Cheese burger_
Have you ever consulted a doctor about a nervous or mental condition? Y /(N) If yes for what: _____

<u>POLYGRAPH EXAMINATIONS</u>

Have you ever been given a Polygraph Examination before? Y /(N) If yes for When: ____ Why: ____
Did you do anything to prepare for today's exam? Y /(N) If yes, explain _____

<u>HONESTY/INTEGRITY</u>   1  2  3 . 4 . 5  6  7  8 (9) 10     PROFILE/HISTORY OF INTEGRITY
                          Lowest              Highest

<u>FAMILY BACKGROUND</u>
Mother/Father (Name, Age, Occupation)     Brothers/Sisters (Names, Ages)
_Angela  41   Ron Clemonts_               _22 sister  Wrenn_

Spouse/Children (Name, Age, Date of Marriage)     Former Spouse (Name, Date of Divorce)
_7h/14  1 year  7 months_

<u>EDUCATION</u>                                     <u>MILITARY SERVICE</u>
Level   Last School Attended   Degree/Major     Service, Rank, Job, Dates, Location, Discharge
_HS_

<u>EMPLOYMENT</u>
Month/Year, Employer, Position, Reason for Leaving

<u>ARREST RECORD</u>
Month/Year, Offense, Location, Disposition

<u>LEISURE ACTIVITIES</u> _Cars  Air soft_

_1/29/13_          _1:25pm_              _[signature]_
Date               Time                  Polygraph Examiner

GOVERNMENT EXHIBIT 3   PENGAD-Bayonne, N.J.